# Wytheville.

## NORFOLK SOUTHERN RAILROAD COMPANY V. FREEMAN SUPPLY CORPORATION.

### June 17, 1926.

1. CARRIERS—*Calculating Freight Rates—Shipments Over Separate and Single Lines.*—The rules for calculating freight rates are very different, where the shipment is over a single line, from those that govern shipments over two separate lines, unless there is a through rate.

2. CARRIERS—*Freight Rates—Commodity Rates—Class Rates.*—Freight rates are divided under two heads, "Commodity" rates and "Class" rates. It is not always easy to determine what is a commodity rate and what is a class rate, but, generally speaking, where a rate applies to a specific commodity alone, it is a commodity rate; and, where a single rate applies to a number of articles of the same general character, it is a class rate.

3. CARRIERS—*Freight Rates—Combination Rates.*—A combination rate is constructed when freight is carried from a point on one railroad to a point on another railroad, when there is no through rate.

4. CARRIERS—*Freight Rates—Class Rates.*—According to Virginia classification No. 2, page 41, item 50, and page 60, item 21, the carload rate on sand and gravel is forty per cent. less than or sixty per cent. of class L.

   *Held:* That this forty per cent. less than L was a class rate and being less than a fifty-eight per cent. commodity rate contended for by the carrier, was applicable under Virginia classification No. 2, page 7, rule 16 (a), to the shipments of sand and gravel in question in the instant case, an action for overcharges.

5. CARRIERS—*Freight Rates—Mileage Rates.*—In the instant case, an action for overcharge on shipments of sand and gravel, defendant railroad contended that as specific rates were published on sand and gravel, mileage rates were inapplicable under note 3, page 7, Virginia Intrastate Tariff No. 3, which provides that mileage rates are only applicable when specific rates are not published. The shipment in question was between Berkley and Six Mile Siding. The rates contended for by defendant were deduced from pages 11 and 21 (Virginia Intrastate Tariff No. 3, under rule 6, p. 7, *Id.*) are expressly not specific rates.

   *Held:* That as there are no specific rates on sand and gravel between

Berkley and Six Mile Siding, mileage rate as provided in Virginia Intrastate Tariff No. 3, page 8, was applicable.

6. Carriers—*Freight Rates—Conflict Between Rates—Case at Bar.*— In the instant case, an action to recover overcharges on sand and gravel shipped, plaintiff relied upon the mileage rate as provided for in Virginia Intrastate Tariff No. 3, page 8, which provides for the application of mileage rates where specific rates are not published, and defendant upon rule 6, page 7, Virginia Intrastate Tariff No. 3, which provides in the same contingency the rates to the next more distant point.  It is well settled that, in cases where there are inconsistent provisions, such as these, in the same tariff, the courts will always give effect to the lower rate.

7. Carriers—*Freight Rates—Class and Commodity Rates.*—Virginia classification No. 2, rule 16 (a), provided that "authorized commodity rates govern only where lower than the class rates specified herein." In the instant case, an action for overcharges, defendant railroad contended that this rule did not apply or had been abrogated by note 2, "Rules and Regulations," p. 7, Virginia Intrastate Tariff No. 3, providing that where a carload commodity rate was established, it removed the application of the class rates on that commodity.

   *Held:*  That this rule did not abrogate Virginia Classification No. 2, rule 16 (a), but only applies when the commodity rate has been established, and a commodity rate higher than an existing class rate can only be established when a railroad company has secured special authority to violate rule 16 (a) of the Virginia Classification.

8. Carriers—*Freight Rates—Virginia Classification No. 2, Rule 16 (a).*— Virginia Classification No. 2, rule 16 (a), providing that "authorized commodity rates shall govern only where lower than the class rates specified herein," is fundamental and inviolable except where express permission has been obtained to violate the rule.

9. Carriers—*Freight Rates—Sand and Gravel—Forty Per Cent. Less Than L —Combination Rates.*—The carload rate on sand and gravel according to Virginia Classification No. 2, page 41, item 50 and page 60, item 21, was forty per cent. less than or sixty per cent. of class L. Forty per cent. less than L is a lettered class other than A, B, C and D within a rule requiring that all lettered classes, other than A, B, C and D (although class rates), be considered (for the purpose of constructing combination rate) commodity rates.

10. Carriers—*Freight Rates—Overcharge—Action by Consignee or Consignor—Case at Bar.*—In the instant case, an action to recover overcharges for freight, plaintiff purchased, f. o. b. the shipping point, consignments of sand and gravel from the original consignor.  Notwithstanding the original consignor appeared in the bills of lading as the consignor, the shipments were really owned at the time they reached the shipping point by the plaintiff.  The plaintiff resold the shipments, f. o. b. destination point, and the consignee paid the

Opinion.

freight charges and deducted the amount of the same from what it owed the plaintiff. Other shipments were loaded as well as made by the plaintiff and were sold by it, f. o. b. destination point, and the freight was paid by the consignee in the same manner.

*Held:* That plaintiff was the real party who paid the overcharges and that it needed no assignment from the consignee in order to prosecute its action.

11. CARRIERS—*Freight Overcharges—Assignment of Claim.*—An assignment by a consignee to a consignor of its claim against a carrier for freight overcharges in consideration of a deduction made by the consignee of the freight charges from the purchase price due by it to the consignor is upon sufficient consideration and need not be under seal.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, in an action of *assumpsit.* Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*C. M. Bain* and *Jas. G. Martin & Bro.*, for the plaintiff in error.

*Jas. E. Heath*, for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This is a short record, but it presents a tangled skein. The defendant in error here, hereafter referred to as plaintiff, as assignee of the General Construction Company, brought action against the plaintiff in error, hereafter referred to as defendant company, to recover alleged excess freight charges upon sand and gravel shipped over defendant company's road from Norfolk (Berkley) to General Construction Company at Six Mile Siding and Providence Siding, on the dates set out in the account sued on.

This account is as follows:

(1)  To overcharges in freight on 108 cars of sand and gravel shipped from Old Dominion Siding, Virginia, by Old Dominion Sand and Gravel Company to General Construction Company at Six Mile Siding, Virginia, during September, October and November, 1922_____ $877.80

(2)  To overcharges in freight on 42 cars of sand and gravel shipped from Norfolk, Virginia, by Freeman Supply Corporation to General Construction Company at Six Mile Siding, Virginia, during September, October and November, 1922_____ 450.75

(3)  To overcharges in freight on six cars of sand and gravel shipped from Norfolk, Virginia, by Freeman Supply Corporation to General Construction Company at Six Mile Siding, Virginia, during the month of November, 1922_____ 41.01

(4)  To overcharges in freight on fifteen cars of gravel shipped from the Old Dominion Siding, Virginia, by Old Dominion Sand and Gravel Company to General Construction Company at Providence Siding, Virginia, during March and April, 1923_____ $ 77.54

A jury was waived and the case was tried before the judge of the Law and Chancery Court of Norfolk, with the result that a judgment was rendered in favor of the plaintiff in the sum of $1,397.75. The correctness of this judgment is before us for review.

There are four items of overcharge in the account. Nos. (1) and (4) represent carload shipments of sand and gravel consigned to the assignor of the plaintiff, from Old Dominion Siding on the Atlantic Coast Line Railway, No. 1, to Six Mile Siding on the Norfolk Southern Railroad, No. 4, to Providence siding on the Norfolk Southern Railroad. Nos. (2) and (3) represent carload shipments of sand and gravel to the same consignee from Norfolk or Berkley, Va., to Six Mile Siding, both points being on the defendant company's line.

The controversy arises not only out of a difference in the construction placed by the parties upon the Virginia

intrastate tariff rates applicable to sand and gravel, and the rules regulating them as they apply to the shipments in controversy, but the legality or applicability of a specific commodity rate of fifty-eight cents per ton on sand and gravel from Norfolk (Berkeley) to Six Mile Siding, issued by the defendant on August 8, 1922, is attacked by the plaintiff.

[1] It will be necessary to consider items of the account (1) and (4) together, and separately from items (2) and (3), as (1) and (4) involve shipments over two separate railroad lines, and the rules for calculating freight rates in such a case, as will appear, are very different from those where the shipment is over a single line, unless there is a through rate, and there was no through rate between Old Dominion Siding on the Atlantic Coast Line Railway and Six Mile Siding on the Norfolk Southern Railroad.

We will consider items of the account (1) and (4) first, and in order to make clear the identical points of difference between the parties, we will give the manner by which the plaintiff, on the one hand, arrived at the rate which it claims is correct, and the manner by which the defendant arrived at the rate which it claims is correct.

[2] Before doing this, however, it will probably clarify these illustrations to say (at least so far as this case is concerned) that freight rates are divided under two heads, "Commodity" rates and "Class" rates. It is not always easy to determine what is a commodity rate and what is a class rate, but generally speaking where a rate applies to a specific commodity alone it is a commodity rate, and where a single rate applies to a number of articles of the same general character, it is a class rate.

We are referred to the following publications which

require consideration in arriving at the correct solution of the questions involved here, and reference will be made to them from time to time.

1. Virginia Classification No. 2, issued April 19, 1925, in which are classified all the various items of freight.

[3] 2. Virginia Intrastate Tariff No. 3, governed (except as provided therein) by Virginia Classification No. 2, *supra,* and subject, so far as the rates published therein are concerned, to the rules for constructing combination rates, as found in Kelly's Freight Tariff No. 228, I. C. C. No. U. S. 1 (p. 7, Virginia Intrastate Tariff No. 3, Note). A combination rate is constructed when freight is carried from a point on one railroad to a point on another railroad, when there is no through rate.

3. Kelly's Freight Tariff No. 228 (referred to above).

4. Supplement No. 4 to Rate Issue No. 59, that is, to the Virginia Intrastate Tariff No. 3, above referred to. This is the supplement by which was issued by the Norfolk Southern Railroad the specific commodity rate of fifty-eight cents per ton on sand and gravel from Norfolk-Berkley, Va., to Six Mile Siding, which plaintiff claims is illegal, as will be seen later.

The plaintiff claims that the proper rate from Norfolk or Berkley to Six Mile Siding at the time the shipments here involved were made, on sand and gravel, was forty-one cents per ton. It arrived at this result in the following manner. According to Virginia Classification No. 2, p. 41, Item 50, and p. 60, Item 21 (*supra* 1), the carload rate on sand and gravel was forty per cent. less than, or sixty per cent. of, Class L. Six Mile Siding is six miles from Berkley, and Providence Junction is over five miles and under ten miles

from Berkley, and the table of class rates in effect at the time provided that, for Class "L," the rate for distances between five and ten miles should be sixty-eight cents per ton. (Va. Intrastate Tariff No. 3, p. 8, *supra* 2.) Forty per cent. less than sixty-eight cents would be forty and eight-tenths or forty-one cents.

Plaintiff claimed that this rate of forty-one cents per ton which was a class rate was the correct rate, rather than the fifty-eight cents per ton commodity rate, because under "General Rules, Virginia Classification No. 2, p. 7 (*supra* 1), rule 16 (a), "authorized commodity rates shall govern only where lower than the class rates specified herein." The forty-one cents per ton class rate, being less than the alleged fifty-eight cents commodity rate, the lower rate is claimed to be the rate applicable to these shipments.

There was no through rate between Old Dominion Siding on the A. C. L. Ry. and Six Mile Siding on the Norfolk Southern Railroad, and the rate from Old Dominion Siding to Norfolk-Berkley was a commodity rate of $1.14 per ton. There is no dispute about this rate. We have, therefore, according to the contention of plaintiff, a combination of rates $1.14 on the A. C. L. and forty-one cents on the Norfolk Southern, out of which a combination rate must be constructed.

The rule for constructing a combination rate is found in Kelly's Freight Tariff No. 228, p. 3 (*supra* 3), and is as follows:

"Where no published through rates are in effect from point of origin to destination on a commodity specified in section 2, and two or more commodity rate factors (see note) are used in arriving at the through rate for a continuous rail shipment thereof, such through rate will be arrived at in the following manner:

"1. Each separately established commodity rate

factor will be reduced by the amount shown in section 2 opposite the name of the commodity.

"2. The reduced commodity rate factors will then be added together.

"3. To the sum of the separately established commodity rate factors thus obtained, add the amount shown in section 2 opposite the name of the commodity.

"Note. Where the rates on the commodities specified in section 2 are published as lettered classes other than A, B, C and D in the Southern, Alabama, Florida, Georgia, Mississippi or Virginia Classifications, or in exceptions thereto, such factors will be considered commodity rates."

Section 2 (Kelly's Freight Tariff, *supra* 3) refers to sand and gravel and the amount shown in section 2 opposite the name sand and gravel is one and one-half cents per hundred pounds, or thirty cents per ton. Therefore, considering forty per cent. less than Class L, a lettered class and as such, for the purposes of constructing a combination rate, a commodity rate according to the note just quoted, at the foot of the rule for constructing the combination rate, we have:

Two commodity rate factors:

| | |
|---|---:|
| From Old Dominion Siding to Norfolk $1.14 less 30 | 84c |
| From Norfolk-Berkley to Six Mile Siding 41 less 30 | 11c |
| Plus | 30c |
| Total | $1.25 |

Which is the combination through rate per ton claimed to be the correct rate by the plaintiff.

The defendant, claiming that the fifty-eight cents per ton commodity rate (Supplement No. 4 to Rate Issue No.

59, *supra* 4), from Berkley to Six Mile Siding was legal and in force at the time of these shipments, contends that the proper combination through rate from Old Dominion Siding on the A. C. L. to Six Mile Siding on the N. S. was $1.42 per ton. It arrived at this conclusion, according to the rule laid down in Kelly's, by taking the two commodity rate factors:

| | |
|---|---:|
| From Old Dominion Siding to Norfolk $1.14 less 30c | .84 |
| From Norfolk-Berkley to Six Mile Siding 58c less 30c | .28 |
| Plus | .30 |
| | $ 1.42 |

Therefore, the question at issue upon items 1 and 4 of the account sued on is whether the combination rate of $1.25 per ton, as contended for by the plaintiff, is correct, or whether the combination rate of $1.42, as contended for by the defendant, is correct.

If the fifty-eight cents per ton commodity rate from Berkley to Six Mile Siding is legal, defendant's contention is established.

If forty per cent. less than L was a class rate, and sand and gravel were listed in Virginia Classification No. 2 under that class at the time these shipments were made and the correct rate per ton from Berkley to Six Mile Siding was forty-one cents, then according to Rule 16 (a), referred to above, the specific commodity rate of fifty-eight cents per ton was illegal and not applicable either in a straight shipment from Berkley to Six Mile Siding or in a combination shipment from Old Dominion Siding to Berkley and thence to Six Mile Siding.

The defendant company challenges this position upon the following grounds:

(1) It alleges that the fifty-eight cents per ton rate from Berkley to Six Mile Siding is legal and applicable

because it is a lower rate than the rate (which it claims was sixty-eight cents per ton) applicable at the time the fifty-eight cents rate was issued.

(2) It claims the fifty-eight cents commodity rate is applicable whether it is lower or higher than the rate at the time of the issuance of the fifty-eight cents rate, because rule 16 (a) does not apply because Note 2, "Rules and Regulations" Virginia Intrastate Tariff No. 3, declares: "Whenever a carload (or less than carload) commodity rate is established, it removes the application of the class rates to or from the same point on that commodity in carload quantities (or less than carload quantities) as the case may be."

(3) It alleges that even if the fifty-eight cents rate is illegal, and if the forty-one cents rate claimed to be the correct rate by plaintiff is in fact correct, still forty per cent. less than L is not a lettered class, and plaintiff has not properly constructed the combination rate, because the rate from Old Dominion Siding being a commodity rate, and the rate from Berkley to Six Mile Siding being a class rate, and one which (because it is not a lettered class) cannot be considered a commodity rate for the purpose of making the combination, we have a commodity rate and a class rate out of which to make the combination rate, and the rule (according to Kelly, p. 3, note (a) for making the combination rate under such circumstances is: "Where a separately established class rate factor, plus a separately established commodity rate factor, is used in constructing a combination rate, no deduction is to be made from either factor and the correct through rate to apply is the sum of the factors." It is claimed,

therefore, that conceding the forty-one cents rate to be correct, the through rate would be—

From Old Dominion Siding to Berkley.............. $ 1.14
From Berkley to Six Mile Siding ...................... .41

Through rate ................................................. $ 1.55

which is higher than the through rate claimed by the defendant to be correct.

(1) The issues here raised involve discussion of the following questions:

(a) Is forty per cent. less than L a class rate?

(b) If so, what was the class rate on sand and gravel per ton between Berkley and Six Mile Siding just before the issuance of the specific commodity rate of fifty-eight cents on August 8, 1922? (Supplement No. 4.)

(c) Was this rate lower or higher than fifty-eight cents?

(a) This particular question was raised and decided adversely to the contention of the defendant by the State Corporation Commission in Case No. 2186, decided May 19, 1924. In that case the Commission said:

"The Virginia Classification provides that sand and gravel in carloads shall be rated at forty (40) per cent less than Class L.

"The question arose at the hearing as to whether or not the sand and gravel provision in the classification was a class rating. *First, if the forty (40) per cent less than Class L is not a class rating* it would not be in the Virginia Classification ratings;   *   *   *

"A simple test for determining whether forty (40) per cent less than Class L is a class rate or a commodity

rate is as follows: If the Commission should order said railroad company to reduce all of its class rates, the railroad company could not escape reducing Class L, or forty (40) per cent less than Class L.

"The question of a percentage of a class rate being a class rate was also considered by the Interstate Commerce Commission in *Charles Boldt Paper Mills* v. *Director General, et al.*, 62 I. C. C. R. 471.

\*　　\*　　\*　　\*　　\*　　\*

"The Commission is of the opinion that the forty (40) per cent less than Class L as carried in the Virginia Classification is a class rate."

[4] We agree with the Corporation Commission in this opinion and hold that forty per cent. less than L, as carried in the Virginia Classification, is a class rate.

[5] (b) We have seen how the plaintiff arrived at the rate of forty-one cents, viz.: By getting the mileage rate as provided for in Virginia Intrastate Tariff No. 3, p. 8. Defendant contends that the mileage rate used by plaintiff cannot apply because of note 3, p. 7, Virginia Intrastate Tariff No. 3, which is:

"Mileage rates published on page 8 herein are applicable only when specific rates are not published."

Defendant then contends that specific rates are published on sand and gravel and this conclusion is arrived at as follows:

Rule 6, p. 7, Virginia Intrastate Tariff No. 3, says: "Intermediate points of origin or destination which are not shown herein, but which are located between two points on the Norfolk Southern Railroad, will take same rates as the next more distant points." Six Mile Siding, the point of destination (item of account No. 1) is not shown in Virginia Intrastate Tariff No. 3. Hence, it is argued that the rate on sand and gravel between Berkley and Six Mile Siding

would be the same as the rate to the next more distant point which is Butts.

By reference to p. 11, *Id.*, the rate from Berkley to Providence Junction on Class L is ninety cents per ton, then by reference to p. 21, *Id.*, Class L (2t 90), extended to the column "Gravel, sand, etc., taking Class L less 40%," the rate to Providence Junction shows sixty-eight cents per ton. Therefore, defendant claims the sixty-eight cents rate was applicable just before the issuance of the fifty-eight cents specific commodity rate on August 8, 1922.

Three freight tariff experts testified that under the conditions shown here the contention of plaintiff is correct and the mileage rate should apply. One expert testified that the defendant's position is correct.

We think the contention of the plaintiff should prevail. In the first place, there were no specific rates on sand and gravel published between Berkley and Six Mile Siding. The rates deducible from pp. 11 and 21 (Virginia Intrastate Tariff No. 3), under rule 6, p. 7, *Id.*, are expressly *not* specific rates. At the top of p. 21, *Id.*, appears this: "Basis for rates on * * gravel * * sand * * in *absence* of specific rates thereon."

At most, therefore, Note 6 is in conflict with Note 3, *supra*, the effect of which is to declare that mileage rates are applicable when specific rates are not published.

[6] We would have Note 3, above mentioned, which provides for the application of mileage rates where specific rates are not published; and we should also have Note 6, which provides, in the same contingency, the rate to the next more distant point. It is well settled that, in cases where there are inconsistent provisions, such as these, in the same tariff, the courts

will always give effect to the lower rate. *United States* v. *Gulf Refining Co.*, decided June 1, 1925, Adv. Op. 1924-5, 268 U. S. 542, 45 S. Ct. 597, 69 L. Ed. 1082. See also Conference Rulings, Interstate Commerce Commission, Ruling No. 239.

But in addition to this there is a bracketed (4) on p. 21, at Providence ˙Junction and Butts, making reference to p. 7, and reference thereto discloses the fact that the rate, sixty-eight cents, does not apply on carload shipments to these points. The shipments we are considering were carload shipments.

We conclude, therefore, that the proper rate on sand and gravel from Berkley to Six Mile Siding, prior to the issuance of the fifty-eight cents rate on August 8, 1922, was forty-one cents.

(c) This rate, which was a class rate, was seventeen cents lower than the fifty-eight cents commodity rate issued August 8, 1922.

[7, 8] (2) The defendant contends that rule 16 (a) does not apply or has been abrogated by Note 2, Rules and Regulations, p. 7, Virginia Intrastate Tariff No. 3, which is as follows:

"Whenever a carload (or less than carload) commodity rate is established, it removes the application of the class rates to or from the same point on that commodity in carload quantities (or less than carload quantities) as the case may be."

This rule does not abrogate Rule 16 (a). Note 2, above set out, only applies when the commodity rate has been *established*, and a commodity rate higher than an existing class rate can only be established, as was held by the Corporation Commission (Case No. 2186, *supra*, decided May, 1924) when a railroad company has secured *special* authority to violate Rule 16 (a) of the Virginia Classification. The fifty-eight cents per ton com-

modity rate on sand and gravel from Berkley to Six Mile Siding was filed with the Commission (Supplement No. 4 to Rate Issue No. 59, August 8, 1922), but no special authority to violate Rule 16 (a) was granted by the Corporation Commission. Hence the specific commodity rate was not established as required by Note 2, *supra*, and Rule 16 (a) applied.

The record here shows that the Corporation Commission of Virginia has uniformly held Rule 16 (a) to be fundamental and inviolable except upon express permission, and, as we have just said, no such permission was granted in this case.

This we think establishes the forty-one cents per ton rate from Berkley to Six Mile Siding.

[9] (3) The contention of defendant as set out under this heading, *supra*, involves consideration of the question as to whether forty per cent. less than L is a lettered class other than A, B, C and D.

Referring again to rules for constructing combination rates (Kelly's Supplement No. 11, p. 3), it will be noted that the application of the rule, as set out above, is predicated upon the use of two or more *commodity* rate factors, and, while the note copied at the bottom of the rule requires that all lettered classes, other than A, B, C and D (although class rates), be considered (for the purpose of constructing combination rate) commodity rates, it is contended that although the letter L should be so considered, yet forty per cent. less than L is not a lettered class, and should not be so considered.

We have, therefore, to determine whether forty per cent. less than L is a lettered class. If forty per cent. of L is not a lettered class, and therefore cannot be considered a commodity rate for the purpose of constructing the combination rate, then note (a) (Kelly's

Supplement No. 11, p. 3) would apply.  That rule declares:

"Where a separately established class rate factor, plus a separately established commodity rate factor, is used in constructing a combination rate, no deduction is to be made from either factor, and the correct through rate to apply is the sum of the factors.  Thus if forty per cent. of L is *not* a lettered class other than A, B, C and D, it being a class rate, the combination rate would be—

From Old Dominion Siding to Berkley (a commodity rate factor) _____ $1.14

Plus: From Berkley to Six Mile Siding (a class rate factor)_____ .41

Making a through combination rate of____ _____$ 1.55

A rate ten cents higher than the rate claimed by defendant to be correct and thirty cents higher than that claimed by the plaintiff to be correct.

We think the position of the plaintiff is the correct one upon this proposition.  Not only is the inference from the decision of the Corporation Commission above quoted to the effect that forty per cent. less than L is a lettered class, or treated for all practical purposes as such, but there is no sound reason why, in constructing combination rates according to Kelly and the note governing, there should be any distinction between Class L and forty per cent. less than Class L.  In the Virginia Classification No. 2, see pp. 41 and 60, and Virginia Intrastate Tariff No. 3, p. 2, sand and gravel appear classified under the letter L, the rate however being forty per cent. less than L.

In addition, and to us this seems conclusive, freight

items are divided into lettered and numbered classes. The reference in the note "lettered classes other than A, B, C and D," undoubtedly had reference to all other lettered classes as distinguished from numbered classes—forty per cent. less than L, viewed in this light, must be considered a lettered class.

So we think that while forty per cent. less than L is a true class rate, for the purposes of the combination rates, it being also a lettered class other than A, B, C and D, it should be treated, or considered, a commodity rate.

Our conclusions, so far as Items 1 and 4 of the account sued on, therefore, are, that the specific commodity rate of fifty-eight cents per ton on sand and gravel from Berkley to Six Mile Siding never became effective, and that the plaintiff's contention as to the rate applicable to shipments from Old Dominion Siding to Six Mile Siding is correct.

Having determined that the fifty-eight cents commodity rate on sand and gravel between Berkley and Six Mile Siding was illegal, and that the forty-one cents class rate was the proper rate to apply, the issue as to the proper rate upon items (2) and (3) of the account is settled in favor of the plaintiff, as the record shows that Six Mile Siding is over five miles and under ten miles from Berkley.

There was a question raised as to the validity of the assignment. It was claimed that there was no privity between the carrier and the plaintiff, and that the assignment not being under seal, no consideration can be presumed, and it was without consideration.

[10, 11] The shipments of September, October, November and December, 1922, 108 carloads, and forty-eight carloads shipped during the same months in 1922, and the shipment of fourteen carloads in March and April, 1923, as specified in the bill of particulars,

or account, were made by the Old Dominion Sand and Gravel Company.

These shipments were purchased, f. o. b. the shipping point, from the original consignor, Old Dominion Sand and Gravel Company, by the plaintiff, and notwithstanding the Old Dominion Sand and Gravel Company appears in the bills of lading as the consignor, the shipments were really owned at the time they left the shipping point by the plaintiff. The plaintiff resold the shipments, f. o. b. destination points, and the consignee, the General Construction Company, paid the freight charges and deducted the amount of the same from what it owed the plaintiff. The other shipments were loaded as well as made by the plaintiff, and were sold by it f. o. b. destination points, and the freight was paid by the consignee in the same manner as was done by it in regard to the other shipments. So that it is plain from the record that the plaintiff is the real party who paid these overcharges, and that it needed no assignment from the General Construction Company in order to prosecute this action. But the plaintiff, prior to instituting suit, had the General Construction Company assign to it whatever claims it had against the defendant by reason of the alleged overcharges. The consideration was the deduction made by the General Construction Company of the freight charges from the purchase price due by it to the plaintiff. Such an assignment does not have to be under seal. *Hawes* v. *Trigg Company,* 110 Va. 165, 65 S. E. 538.

We are of opinion, therefore, for the reasons assigned, to affirm the judgment of the trial court.

*Affirmed.*