# Richmond.

## MATHIESON ALKALI WORKS, INC. v. NORFOLK AND WESTERN RAILWAY COMPANY, SOUTHERN RAILWAY COMPANY AND CAROLINA, CLINCHFIELD AND OHIO RAILWAY CO.

### AND

## MATHIESON ALKALI WORKS, INC. v. NORFOLK AND WESTERN RAILWAY COMPANY AND SOUTHERN RAILWAY COMPANY.

### March 17, 1927.

1. CARRIERS—*Rates—Corporation Commission—Action for Overcharges—Case at Bar.*—The instant case was an action against carriers by a shipper for overcharges. The charges complained of were fixed by the Corporation Commission by tariffs filed in conformity with the Virginia statutes and all formalities of the law were complied with and the charges were not in excess of those allowed by the order of the Corporation Commission. Subsequently, however, the Commission found that these prescribed rates were unreasonable and had been so since their institution. Upon this finding of the Commission, the plaintiff based its action for overcharges by the railroads.

   *Held:* That as the charges were in accordance with the rates prescribed by the Commission, plaintiff could not recover for overcharges, notwithstanding the subsequent finding of the Commission that the prescribed rates were unreasonable.

2. RAILROADS—*Rates—Rates Prescribed by Corporation Commission—Rates Subsequently Condemned by the Commission.*—The Corporation Commission of Virginia has no express power to retrospectively condemn rates, established according to law, as unreasonable, and no such power is impliedly granted it.

3. RAILROADS—*Rates—Rates Prescribed by Corporation Commission—Rates Subsequently Condemned by the Commission—Implied Power of Commission.*—The power of the Corporation Commission to subsequently condemn rates, lawfully established, cannot be implied from the fact

that unless the Commission has such power the common law remedy of a shipper to bring an action for extortionate charges is lost to him and he has no remedy but may only have the rates changed by the Commission. If the rates in Virginia were carrier made, as they are under the Federal law, the implication against deprivation of the common law right and remedy by statute, without some substitute, would afford a strong reason for the suggestion that the right to declare such a rate unreasonable *ab initio* and permit recovery by a shipper of extortionate charges in the common law courts, was implied. But as the rates in Virginia are Commission made rates, the shipper is deprived of no rights, common law or otherwise, because his rights along with the transportation company's rights are determined by the Commission when the rates are established.

4. CARRIERS—*Rates—Corporation Commission—Commission Rates Conclusively Reasonable as Long as they Remain in Force.*—The rates in Virginia are Commission made rates under the Constitution and statute law of this State. They are both legal and lawful rates and conclusively reasonable as long as they remain in force, with power in the Commission only of changing them as to the future. The shipper is deprived of no rights, common law or otherwise, because his rights, along with the transportation company's rights, are determined by the Commission when the rates are established.

5. CARRIERS—*Rates—Differences between Practice of Interstate Commerce act and Virginia Law.*—The rates under the interstate commerce act are voluntary rates initiated and filed by carriers and they are thus not rates prescribed or approved by the Commission itself, as under the Virginia law. The Interstate Commerce Commission is given power to declare a rate unreasonable or discriminatory retroactively, and to award reparation, such award, however, being *prima facie* merely, such power is not given by the Virginia laws to the State Corporation Commission.

6. CARRIERS—*Rates—Rates Prescribed by the Corporation Commission—Deviation from Rates—Section 3910 of the Code of 1919.*—Section 3910 of the Code of 1919 expressly forbids any deviation from any authorized prescribed and published rates. This provision, and the lack of express authority to declare rates void retroactively, follow as a natural sequence to the conferring of power on the Commission and making it its duty to declare, authorize or approve rates which become, upon and because of such authorization, legally established rates, just as the express grant of power to the Interstate Commerce Commission to declare purely carrier initiated rates void, for unreasonableness or because of discrimination, retroactively and to award reparation, follows logically the manner of the initiation of rates under the Federal practice.

7. CARRIERS—*Rates—Right to Recover for Extortionate Charges—Protection of Right Under Federal and State Procedure.*—The common law right

to recover for extortionate charges is taken care of under the Federal procedure by the power granted the Interstate Commerce Comission to declare existing rates unreasonable *ab initio*, and award reparation, followed by right of recovery in the common law courts, while in Virginia the common law rights are protected by the prescribing of rates by the Corporation Commission, which carry the weight of conclusiveness as to their reasonableness as long as they are in force.

8. RAILROADS—*Rates—Powers of Corporation Commission—Section 156(b) of the Constitution of 1902.*—Section 156(b) of the Constitution of 1902 imposes upon the Corporation Commission the primary duty of prescribing and enforcing such rates, etc., as may seem reasonable and just, subject to appeal to the Supreme Court of Appeals, and there is no doubt as to the intention of the framers of the Constitution to give to rates prescribed under this power the character of judicial sanction.

9. CARRIERS—*Rates—Rates Established by Commission not to be Governed by the Courts—Object of Section 3920 of the Code of 1919.*—Section 3920 of the Code of 1919 provides that the reasonableness and validity, etc., of rates prescribed by the State Corporation Commission should not be governed in suits brought by any persons in the ordinary courts of justice. This provision was not intended to limit the power of the Corporation Commission to declare rates unreasonable retroactively or otherwise, but to prevent *nisi prius* courts from questioning the reasonableness of any rate prescribed by the Corporation Commission, and to preserve to the Commission the exclusive and paramount power (subject to appeal) to prescribe rates and to establish their reasonableness. The provision would not therefore be inconsistent with an express grant of power to the Commission to declare a rate established theretofore by the Commission itself unreasonable retroactively.

10. CARRIERS—*Rates—Rates Established by Commission not to be Governed by the Courts—Object of Section 3920 of the Code of 1919.*—But in the absence of power in the Corporation Commission to declare a rate, established legally, unreasonable retroactively, so as to entitle a shipper to reparation, section 3920 of the Code of 1919 applies in full force, because the question of the reasonableness of the rates would be a necessary primary inquiry by the court before relief could be had.

11. CARRIERS—*Rates—Corporation Commission—Reasonableness—Declaring Rates Unreasonable Retroactively—Case at Bar.*—In Virginia rates are Commission made, and as long as they are in force they are conclusively presumed to be reasonable; the Corporation Commission has no power to declare them unreasonable retroactively once they are legally established, and in the instant case, an action by a shipper for overcharges, the rates of which complaint is made were the only

lawful rates in effect, and the defendants were forbidden by law to deviate from said rates by charging more or less than the lawful rate, and hence the evidence presents no cause of action over which a judicial tribunal in Virginia has jurisdiction.

Error to a judgment of the Law and Equity Court of the city of Richmond, in actions of assumpsit. Judgment for defendants. Plaintiffs assign error.

*Affirmed.*

The opinion states the case.

*J. R. Tucker,* for the plaintiff in error.

*Wirt P. Marks, Jr., Scott, Lloyd & Scott, Morrison, Robertson, Rouse & Flanagan, W. D. Cardwell, Jas. J. McLauchlin, C. J. Rixey,* for the defendants in error.

CHICHESTER, J., delivered the opinion of the court.

These two actions of trespass on the case in assumpsit were instituted by the Mathieson Alkali Works, Incorporated (hereafter designated as plaintiff), in the Law and Equity Court of the city of Richmond, one of the *nisi prius* courts of this Commonwealth, one against the Norfolk and Western Railway Company, Southern Railway Company and Carolina, Clinchfield and Ohio Railway Company, the other against the Norfolk and Western Railway Company and Southern Railway Company, common carriers of freight, all doing interstate and intrastate business in the State of Virginia.

The cases are being heard here under the stipulation that the second case is to be heard along with the first upon the record in the first mentioned case, identically the same questions being involved in each

case.   Hereafter the discussion will be confined and references made to the record in the first case in which the amount sued for is $40,238.35.

The ground of liability upon which the plaintiff seeks to recover the amount claimed is that it represents the aggregate of amounts paid by the plaintiff to the defendants for transportation of coal which plaintiff alleges were overcharges in freight rates on intrastate shipments of coal moving over the lines of the defendant carriers from certain designated points to the plant of the plaintiff at Saltville, Virginia.

The defendants appeared specially and filed pleas denying the jurisdiction of the trial court.   Briefly the pleas averred:

1. That the defendants were transportation companies, common carriers by rail, doing business in the State of Virginia in interstate and intrastate commerce.

2. That the full authority of the Commonwealth of Virginia over intrastate rates for the transportation of coal by them—the subject matter of this action—is vested, by the Constitution and laws, in the State Corporation Commission; that the authority of said Commission to approve and prescribe such rates is, under the said Constitution and laws, paramount and exclusive.

3. That in August, 1920, the existing rates of transportation between the points referred to in these actions for coal was $1.70 per net ton, and by an order duly entered by the State Corporation Commission of Virginia, that rate was advanced to $2.26½ per net ton between certain of these points and to $2.38 per net ton between certain other of said points, said rate becoming effective August 31, 1920, and continuing in effect, as to the first, until September 21,

1920, and as to the second from September 21, 1920, to July 1, 1922; that said rates were duly promulgated and published as required by law, and were the only rates that could lawfully have been charged by the defendants herein and were the only rates that could lawfully have been paid by the said plaintiff.

4. That during the periods when said rates became and were effective as aforesaid, the plaintiff shipped a large number of cars of coal in intrastate commerce between the points in Virginia above indicated, paying on said shipments the carload rates effective during said periods.

5. That in the action aforesaid the plaintiff therein claims that said rates of $2.26½ and $2.38 respectively, effective as aforesaid, were unreasonable, and this action is brought and is being prosecuted by the said plaintiff to recover the difference between the said carload rate of $2.26½ per ton paid upon said shipments made during the period from August 31, 1920, to September 21, 1920, and the difference between the said carload rate of $2.38 per ton paid upon said shipments made during the period from September 21, 1920, to July 1, 1922, and another rate claimed by the said plaintiff to be a reasonable carload rate per ton, to wit: a carload rate of $2.12½ per ton, for both periods.

6. That under and by virtue of the Constitution and laws of the State of Virginia, said carload rates of $2.26½ and $2.38 per net ton during their respective effective dates were and are conclusively presumed to be reasonable, just and valid; that the reasonableness, justness and validity thereof cannot be questioned in any suit brought by said plaintiff in any ordinary court of justice of the Commonwealth of Virginia against the said defendants, and that the Law and

Equity Court of the city of Richmond is without jurisdiction to inquire into, or to render a decision respecting the reasonableness, or unreasonableness of said rates, or to enter any order or judgment with respect thereto.

The plaintiff moved to strike out the pleas and joined issue thereon. The trial court sustained the pleas and entered judgment for the defendants, upon the ground as expressed in the order "that this court has no jurisdiction of the subject matter arising upon the plaintiff's declaration and therefore the plaintiff's actions cannot be sustained."

This ruling of the trial court forms the basis of the sole assignment of error.

[1] The evidence in the case presents no conflicts. It consists entirely of certain orders of the State Corporation Commission and facts agreed by the parties.

A fair summary of the evidence is that in July, 1920, the Interstate Commerce Commission, in a proceeding known as Ex Parte 74, permitted all of the interstate carriers of the country to make horizontal percentage increases in their existing freight tariffs. While this proceeding was pending before the Interstate Commerce Commission, the various carriers filed with the several State Commissions their petitions for corresponding increases with the purpose of making uniform the percentage increases in interstate and intrastate rates.

On August 16, 1920, the State Corporation Commission of this State entered the following order in response to this petition: "It now appearing to the Commission that notice of this hearing on the original, amended and supplemental petitions has been duly published in certain newspapers as required in the order of this Commission entered on the 9th day of

August, 1920, and these two cases having been heretofore consolidated and directed to be heard together, came on this day to be heard in pursuance of said notice and order, and were heard upon the original, amended and supplemental petitions, the exhibits therewith filed, including the report and order of the Interstate Commerce Commission in the proceedings entitled Ex Parte 74, and upon the record, testimony and exhibits introduced before the Interstate Commerce Commission in said proceedings entitled Ex Parte 74, which record and proceedings have heretofore been filed with this Commission and made a part of the record in these cases.

"And it appearing to this Commission that the Interstate Commerce Commission, after full investigation and exhaustive hearings, by its report dated the 29th day of July, 1920, in Ex Parte 74, authorized and permitted the carriers operating in the eastern and southern group to increase all rates, fares and charges for both passenger and freight service to the extent and in the manner set forth in said report, and further authorized carriers by special permission subsequently issued to file and publish blanket supplements establishing the increased rates, fares and charges authorized in said report on not less than five days' notice to the Commission and the public.

"And it appearing from the application of the carriers that they desire to make increases in intrastate rates, fares and charges between points within the State of Virginia to correspond with the increases which they are preparing to publish in interstate rates between points in the State of Virginia, under the authority granted in the decision in Ex Parte 74 so as to make the advances as nearly as may be coincident with the increases to be made in interstate rates, fares and charges.

"On consideration of the said original, amended and supplemental application of the carriers in this proceeding, the exhibits therewith filed, and the record, evidence and exhibits before the Interstate Commerce Commission in Ex Parte 74, as well as the report of the Commission in said proceeding and testimony submitted by the carriers and shippers before this Commission at this hearing.

"It is ordered, That all intrastate rates, fares and charges applicable within the State of Virginia over the lines of steam railroads subject to our jurisdiction and the electric divisions of the Norfolk Southern Railroad may be increased as indicated below."

And then follows the percentage of increase permitted and to be applied in the various groupings of territory throughout the State as they had theretofore been fixed by the Corporation Commission, and so far as this case is concerned as stated in the plea to the jurisdiction heretofore set out.

The defendants advanced their rates to the maximum permitted by this order. It is admitted that these tariffs, as well as subsequent changes therein, were filed in conformity with the Virginia statutes and that all other formalities of law were complied with; that the rates charged the plaintiff for transportation of coal between the points in the declaration mentioned were not in excess of those thus allowed by the order, and which became the legal rates when the formalities required by the statute were complied with; that the defendants conformed to the rates so established as long as they were in force and charged and received from the plaintiff no more and no less than was thus legally prescribed; that the plaintiff paid the rates thus charged.

The application of the maximum authorized percentage increases, however, brought about a maladjustment

of the preexisting freight rates on coal to Saltville from mines located on the defendant carriers' lines. The rates from Clinchfield and St. Charles mines, which, prior to the order of August 16, 1920, had been upon a parity, became considerably higher in the one case than in the other.

In February, 1921, complaint of this situation was made to the Corporation Commission by the plaintiff, with the result that the Commission, after an investigation, entered this order: "This case being at issue upon complaint and answer on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and said Commission having, on the date hereof, made and filed a report containing its findings of fact and conclusions thereon, which said report is hereby referred to and made a part hereof:

"It is ordered, That the above named defendants as they participate in the traffic involved be, and they are, hereby notified and required to cease and desist, on or before the first day of September, 1923, and thereafter to abstain from publishing, demanding or collecting, carload rates for the transportation of coal from St. Charles and Clinchfield coal groups, in the State of Virginia, to Saltville, Virginia, that exceed the present rates applicable on the same traffic from St. Charles and Clinchfield coal groups to Abingdon, Virginia."

The report, referred to in the order and made a part thereof, expressly declares that the rates as a whole are not unreasonably high, but that the grouping arrangement of destination points, made theretofore by the Commission, between Bristol and Roanoke, is unreasonable in so far as it brings about a rate to Saltville and intermediate points higher than the rates contemporaneously applicable to Abingdon. Then follows this

finding: "Upon all the evidence of record, we find and conclude that the intrastate rates to Saltville, Virginia, from St. Charles and Clinchfield coal groups are and have been since August 26, 1920, and will continue to be, unreasonable to the extent that they exceed and have exceeded the rates contemporaneously applicable to points in the Abingdon, Virginia, group."

It is upon this paragraph or finding of the report, made a part of the Commission's order by reference, that the plaintiff rests its alleged right to collect alleged excess freight charges. The argument in the case has taken a wide range. Nothing has been left undone which industry could accomplish and no angle of the case which ability could suggest has been overlooked.

[2] The real question involved, however, is, has the Corporation Commission of Virginia the power to retrospectively condemn rates, established according to law, as unreasonable. If it has the power, then its findings and order in this case constitute an adjudication of unreasonableness from the beginning.

No such express power is found in the Constitution or statute law of Virginia, as is found in the interstate commerce act, but it is contended that the power is necessarily implied.

[3, 4] The first step in the argument that this power is impliedly granted is that under section 156 (b) of the Constitution the Commission is given the power and is charged with the duty of regulating all transportation and transmission companies doing business in Virginia in the performance of the public duties. The second step is that in the performance of that regulatory duty and power the Commission may permit tentative, carrier initiated rates, as distinguished from Commission made rates which carry with them in effect an adjudi-

cation of reasonableness as long as they are in force, and third, that assuming this position to be sound, then, unless the common law courts have jurisdiction in this class of cases, a shipper has no remedy for the recovery of extortionate charges as he had at common law, but may only have them changed by the Commission.

If the rates in Virginia are carrier made, as it is conceded they are under the Federal law, as distinguished from Commission made rates, then it must be conceded that the proposition just enunciated would be true, and the implication against deprivation of a common law right and remedy by statute, without some substitute, would afford a strong reason for the suggestion that the right to declare such a rate unreasonable *ab initio* and permit recovery by a shipper of extortionate charges in the common law courts, was implied.

On the other hand, if the rates in Virginia are Commission made rates under the Constitution and statute law of this State, then they are both legal and lawful rates and conclusively reasonable as long as they remain in force, with power in the Commission only of changing them as to the future. The shipper is deprived of no rights, common law or otherwise, because his rights, along with the transportation company's rights are determined by the Commission when the rates are established.

The determination of the question as to whether rates are adjudicated rates from their inception, therefore, settles this controversy.

The contention of the plaintiff, if sound, would give to our Corporation Commission, under the provisions of our Constitution and statutes touching the regulation of transportation rates, identical powers with those given the Interstate Commerce Commission under the

Federal law, and yet it is admitted by the plaintiff here that, so far as practice and the grant of express power are concerned, there are at least two material differences. This appears in the plaintiff's brief: "The essential differences between the practice under the interstate commerce act and the Virginia law lie in the fact that under the former transportation rates are always initiated by the carrier, while under the latter the Commission may either itself prescribe such rates or permit them to be initiated by the carriers, and, secondly, in the power given by the Federal act to the Federal Commission to calculate the damages suffered by a shipper through the illegal practices of the carrier in the application of unreasonable rates and to recommend payment of the amount so found. This power is not given to the Virginia Commission."

[5] In the brief for defendants this is said: "Under the laws of Virginia  *  *  *  rates are not rates of the carrier, but are rates prescribed or approved by the Commission itself  *  *  *." The vital difference between the interstate commerce act (U. S. Comp. St. sec. 8563, *et seq.*) and the Virginia Constitution and laws are:

(1) The rates under the interstate commerce act are voluntary rates initiated and filed by carriers (*Int. Com. Com.* v. *L. & N. R. Co.*, 227 U. S. 88, 33 S. Ct. 185, 57 L. Ed. 431, and *Miller Mill Co.* v. *L. & N. R. Co.*, 207 Ala. 253, 92 So. 797) and they are thus not rates prescribed or approved by the Commission itself, as under the Virginia law;

(2) The Interstate Commerce Commission is given power to declare a rate unreasonable or discriminatory retroactively, and to award reparation, such award, however, being *prima facie* merely, such power not being given by the Virginia laws to the State Corporation Commission.

Section 13, *Int. Com. Act*, as amended, 41 Stat. L., page 484 (U. S. Comp. St. section 8581); Section 16, *Int. Com. Act*, as amended, 21 Stat. L., page 491 (U. S. Comp. St. section 8584); *Great Northern R. Co.* v. *O'Conor*, 232 U. S. 508, 34 S. Ct. 380, 58 L. Ed. 703; *T. & P. R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075.

[6] The difference of origin of rates established under Virginia law by the Commission as distinguished from rates entirely initiated by the carrier as under the Federal law, is one which cannot be ignored, especially when the manner of institution of rates under the Federal law is followed by the express power, conferred upon the Interstate Commerce Commission, to declare rates unreasonable and discriminatory retroactively, and to award reparation, while following the grant of power to the State Corporation Commission to authorize or prescribe rates, there is no express grant of power to declare them unreasonable retroactively. In addition section 3910 of the Code expressly forbids any deviation from any authorized or prescribed and. published rates. It declares: "When the State Corporation Commission shall have either authorized or prescribed and published any such rates, fares and charges, it shall be unlawful for any such company to charge, demand, collect or receive from any person or persons a greater or less compensation for the transportation of passengers or property, or for any services in connection therewith, than is specified in such published schedule of rates, fares, and charges, so authorized, or prescribed and published by said Commission, unless or until changed by the State Corporation Commission."

This provision, and the lack of express authority to declare rates void retroactively, follow as a natural

sequence to the conferring of power on the Commission and making it its duty to declare, authorize or approve rates which become, upon and because of such authorization, legally established rates, just as the express grant of power to the Interstate Commerce Commission to declare purely carrier initiated rates void for unreasonableness or because of discrimination retroactively and to award reparation, follows logically the manner of the initiation of rates under the Federal practice.

The omission to specifically confer the power on the State Corporation Commission to declare a legally established rate unreasonable retroactively, and to award reparation, is significant in view of the fact that the Federal act was before the Constitutional convention and the legislature when the Constitution was adopted and the corporation statutes were enacted, and many of its provisions were adopted. An intentional omission under the circumstances seems clear.

[7] The common law right to recover for extortionate charges is taken care of under the Federal procedure by the power granted the Commission to declare existing rates unreasonable, *ab initio*, and award reparation, followed by right of recovery in the common law courts, while in Virginia the common law rights· are protected by the prescribing of rates by the Commission, which carry the weight of conclusiveness as to their reasonableness as long as they are in force.

Thus in *C., C. & O. Ry.* v. *C. V. L. Co.*, 112 Va. 540, 72 S. E. 116, this court said: "The validity of the supposed contract was denied by the plaintiff, but the circuit court refused to give an instruction that it was unlawful for the defendant to wilfully and knowingly obtain from the agents of the plaintiff, by contract or other means or device, transportation at less than the

freight rate of the plaintiff authorized, prescribed and published by the State Corporation Commission.

"The evidence tended to show the existence, by lawful authority, of such a rate, and the court erred in refusing the instruction. The trend of decision condemns agreements of this character as contrary to public policy and void, and the rule of decision thus established has been carried into statute in this State."

There is, therefore, a clear distinction between the Federal law and the Virginia law with reference to the inauguration of rates, and we think the effect of the authority and duties conferred and imposed upon the Corporation Commission here, is to give to legally established rates a sanction which puts beyond question the reasonableness of such rates as long as they remain in force.

Section 156 (b) of the Constitution provides: "The Commission shall have the power, and be charged with the duty, of supervising, regulating and controlling all transportation and transmission companies doing business in this State in all matters relating to the performance of their public duties and their charges therefor * * * and to that end the Commission shall, from time to time, *prescribe* (italics supplied) and enforce * * * such rates, charges and classifications of traffic * * * as may be reasonable and just. * * * The authority of the Commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges and classifications of traffic for transportation and transmission companies, shall be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the General Assembly to legislate thereon by general laws."

[8] This constitutional provision imposes upon the Corporation Commission the primary duty of prescribing and enforcing such rates, etc., as may seem reasonable and just, subject to appeal to this court.

There is not a shadow of doubt as to the intention of the framers of the Constitution to give to rates prescribed under this power the character of judicial sanction. Doubt is sought to be thrown upon the meaning of the provision because of the physical impossibility of investigation and judicial approval by the Commission of every proposed rate advance, and of the practice followed by the Commission with reference to proposed advances. We are not concerned with the methods pursued or the rules adopted and followed by the Commission in such matters. Certainly it has functioned with great efficiency and with justice to shipper and transportation company alike, with no reason for complaint, from the beginning of its existence, all of which would seem to justify the granting of power to prescribe rates which are not merely tentative, in the sense that they may upon later investigation be upset, and declared null and void from the beginning, but rates bearing the sanction of the Commission's approval as conclusively reasonable.

Section 3910, quoted, *supra*, supports this contention.

It is true, as contended by plaintiff, that there is nothing in the statute passed by the legislature which imposes upon the Commission the duty to affirmatively determine the reasonableness of all rates proposed or petitioned for by transportation companies, but the Constitution and statutes contemplate that all rates shall be presented to and changes in rates shall be approved by the Commission, and all these upon notice, publication, etc., a procedure which gives finality of character to the action of the Commission upon rates,

in sharp contrast to purely carrier initiated rates under the Federal practice.

There is nothing in any statute cited, as far as we have been able to discover, inconsistent with this conclusion, or which makes any statute unworkable. But even if there were, it could not be held sufficient to destroy the fundamental principle which underlies the intention of the framers of the Constitution as expressed in that instrument.

[9] Section 3920 of the Code provides: "The reasonableness, justness, and validity of any rate, charge, classification of traffic, regulation or requirement, theretofore prescribed by the State Corporation Commission, within the scope of its authority and then in force, shall not be questioned in suits brought by any person, in the ordinary courts of justice, against any transportation company wherein is involved the charges of any such company for the transportation of any passenger or freight, or cars, or unjust discrimination in relation thereto, but in all courts of this State shall be conclusively presumed to be reasonable, just and valid; and said Commission shall, from time to time, and as often as circumstances may require, prescribe, change and revise, or cause to be changed and revised, the schedules of rates, charges and classification of traffic of transportation companies. All such schedules shall be received and held in all such suits as *prima facie* the schedules of the State Corporation Commission, without further proof than the production of the schedules desired to be used as evidence, with a certificate of the clerk of the Commission that the same is a true copy of the schedule prepared or approved by said Commission for the transportation company therein named."

This section adds strength to the views heretofore

expressed but we do not attach the far reaching importance to it which counsel for defendants in error do. Its intention is not to limit the power of the Corporation Commission to declare rates unreasonable retroactively or otherwise, but to prevent *nisi prius* courts from questioning the reasonableness of any rate prescribed by the Corporation Commission, and to preserve to the Commission the exclusive and paramount power (subject to appeal) to prescribe rates and to establish their reasonableness. The provision would not, therefore, be inconsistent with an express grant of power to the Commission to declare a rate established theretofore by the Commission itself unreasonable retroactively. When a rate had been declared unreasonable under such provision, then recovery of an overcharge of freight in a *nisi prius* court would not be a questioning of a rate prescribed by the Commission, but on the other hand it would be a proceeding in a common law court not to review or reverse the action of the Commission or to determine the reasonableness of the rate, but to bring the common law jurisdiction in aid of the Commission's action in order to furnish complete relief.

[10] But on the other hand in the absence of power in the Corporation Commission to declare a rate, established as were the rates involved here, unreasonable retroactively, so as to entitle a shipper to reparation, the statute applies in full force, because the question of the reasonableness of the rate would be a necessary primary inquiry by the court before relief could be had.

Decisions from other jurisdictions for the most part afford little or no assistance because they are based upon statutes differing materially from the constitutional and statutory provisions regulating rate making in Virginia. We have been referred to many such

decisions. Many of these are from the United States Supreme Court, but the difference between our laws and the interstate commerce law which have been pointed out heretofore in this opinion, on the vital question here involved, must make apparent the inapplicability of such cases.

The decision in the case of *T. R. Miller Co.* v. *L. & N. Ry. Co.*, 207 Ala. 253, 92 So. 797, is most persuasive because of the practical similarity of the Virginia law to provisions of the Alabama law, touching the rate making duties of the Commissions in the respective States, and in view of the decision there of the vital questions under discussion here.

Section 5525 of the Alabama Code provides that: "No change shall be made by any common carrier in the rates, fares and charges * * * which have been filed, and published by it, or which are in force at the time, until the proposed changes have been submitted to and approved by an order of the Railroad Commission."

The opinion discusses many other features of the Alabama statutes almost identical with those we have referred to in the Virginia statutes as bearing upon the powers of the Commission, but it would unnecessarily prolong this opinion to go into details as to this or to quote at length from the opinion. Suffice it to say that the court decided that under the Alabama statute (5525) the rates in that State were Commission rates and added: "Manifestly, whether we consider the reason and policy of the statutes, or their express language, the Commission may not nullify the operation and validity of any tariff or rate which it has previously approved by a statutory order, made under the provisions of sections 5525-5527 of the Code, except as to its future operation.

"Counsel draws analogies from the Federal system of rate regulation and procedure, and pungently criticises the original opinion, *supra*, because it ignores the principles declared in such cases as *T. & P. R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Anno. Cas. 1075; *Nat. Pole Co.* v. *C. & N. Ry. Co.*, 211 Fed. 65, 127 C. C. A. 561, and others, cited by counsel in brief.

"In reply we wish merely to call the learned counsel's attention to the fact that the Federal cases have been decided under a regulatory system quite different from our own, and are therefore wholly inapt. Indeed, it should be unnecessary for us to point out that, under the Federal system, the carrier files and publishes its tariffs *sua sponte*, and they go into operation without any judgment or order of approval by the Interstate Commerce Commission, and are subject to review and condemnation as unreasonable, in which event the law itself provides for restitution to complaining shippers of all charges collected in excess of the rate thereafter found by the Commission to be the reasonable rate, and established by it as such. When the carrier files its rates it is fully understood that they are provisional only, and subject to disallowance, with retroactive effect. In this respect, as will be seen from our previous discussion, the Alabama system is radically different; and counsel's failure to perceive the difference seems to be the source of all the fallacious reasoning upon which the criticism of our opinion has been grounded."

The only point upon which the learned counsel for plaintiff has sought to differentiate the Alabama statute from ours is that the Alabama statute requires the approval of proposed rates by an order, while section 3910 of our statute requires submission and approval. We see no practical distinction.

Reference is made to *Norfolk So. R. Co.* v. *Freeman Supply Co.*, 145 Va. 207, 133 S. E. 817, as recognizing a fundamental distinction. No such question was involved there. The court there was interpreting tariff schedules and the rules relating thereto. The practical result was that we held the railroad company had misconstrued the tariff schedules and had charged an *illegal* rate. The shipper was permitted to recover the difference between the proper rate prescribed by the Corporation Commission, as we interpreted the tariffs, and the illegal rate which the railroad company charged.

Interesting, persuasive and instructive cases are: *Great Western Portland Cement Co.* v. *Public Service Commission*, 121 Kan. 531, 247 Pac. 881; *Murphy* v. *New York Cent. R. Co.*, 170 App. Div. 788, 156 N. Y. 49; *Utah-Idaho Cent. Ry. Co.* v. *Public Utilities Commission*, 64 Utah 54, 227 Pac. 1025; *Northern Pac. Ry. Co.* v. *Department of Public Works*, 136 Wash. 389, 240 Pac. 362; *E. L. Young Heading Co.* v. *Payne*, 127 Miss. 48, 89 So. 782.

[11] Our conclusions, as indicated, are, that in Virginia rates are Commission made, and as long as they are in force they are conclusively presumed to be reasonable; that the Corporation Commission has no power to declare them unreasonable retroactively once they are legally established; and, in the language of the learned judge of the trial court, that "the rates of which complaint is made were the only lawful rates in effect, and the defendants were forbidden by law to deviate from said rates by charging more or less than the lawful rate, and hence the evidence presents no cause of action over which a judicial tribunal in Virginia has jurisdiction."

The judgment of the trial court is therefore affirmed.

*Affirmed.*