E. L. YOUNG HEADING Co. *v.* PAYNE, Director General of Railroads.

[89 South. 782. No. 21909.]

1. CARRIERS. *Where there were two tariffs, that specifically dealing with the identical material shipped supplies.*

In a suit by a shipper against a carrier for an alleged overcharge of freight demanded and collected by the carrier of the shipper, on shipments of rough sawed heading, and claimed by the latter to be unreasonable and extortionate, and there were two tariffs of the carrier on file with and approved by the Railroad Commission, one providing a rate on heading bolts, and the other on rough sawed heading, and the testimony showed a substantial difference between heading bolts and rough sawed heading, *held*, the tariff rate on rough sawed heading applied, and not the tariff on heading bolts, because the former dealt specifically with the identical materials shipped.

2. CARRIERS. *Statutes held to intend that all freight schedules shall be filed with and approved by Railroad Commission, that no carrier shall charge more nor less than the rate so fixed, and shipper cannot recover for unreasonable charge of rate so approved.*

Sections 4842, 4839, 4840, 4841, 4845, 4844, and 4849, Code of 1906, Hemingway's Code, sections 7627, 7624, 7625, 7626, 7630, 7629, and 7634, manifest plainly a purpose on the part of the legislature that all common carriers by railroad doing business in this state shall submit to, and file with, and have approved by, the State Railroad Commission, all schedules of freight rates; and that the Railroad Commission shall have power to determine and fix what shall be reasonable rates, and when so determined and fixed that no common carrier will be permitted to deviate from such rates so filed and approved, either by charging more or less than the rate so fixed; therefore in a suit by a shipper against a common carrier to recover freight charges demanded and collected by the latter of the former, on the ground that the same was unreasonable and extortionate, which claim the evidence for the plaintiff tended to establish, but where the evidence showed further that the rate demanded and collected had been filed with and approved by the Railroad Commission, there can be no recovery by the plaintiff.

3. CARRIERS. *Shipper's remedy for unreasonable charges under an approved schedule is by application to the Railroad Commission.*
In such case the shipper is furnished by section 4849, Code of 1906, section 7634, Hemingway's Code, a remedy for the alleged unreasonable and extortionate rate, by means of complaint and hearing before the Railroad Commission, which is fully authorized by order to revise and reduce any rate found to be unjust, and enforce compliance therewith by the carrier.

4. CARRIERS. *Statute prohibiting unreasonable compensation does not apply to rate approved by and filed with Railroad Commission.*
The clause in section 4839, Code of 1906, section 7624, Hemingway's Code, which prohibits carriers from demanding and receiving unreasonable compensation for services rendered in the carrying of freight, must be construed in connection with the other sections of the Supervision Statutes, and, when so done, it is apparent that it has no application where the tariff rate in question has been approved and is on file with the Railroad Commission—it only applies when this has not been done.

5. CARRIERS. *Carrier's observance of rate approved and filed with Railroad Commission prohibits common-law remedy for overcharge.*
The observance by the carrier of the rate on file and approved by the Railroad Commission, where the law prohibits the carrier from charging either more or less than the approved rate,

127 Miss.—4

abrogates the common-law remedy of the shipper to recover for an overcharge in freight on the ground that it is unreasonable and extortionate.

6. CARRIERS. *Statute prohibiting charging more than rate specified in bill of lading does not apply to rate filed and approved by Railroad Commission.* .

    The clause in section 4839, Code of 1906, section 7624m, Hemingway's Code, prohibiting the carrier from charging more than the rate specified in the bill of lading issued by its authority, has no application where the rate charged and collected is on file with and has been approved by the Railroad Commission; that clause only applies where the rate in question has not been approved by the Commission.

APPEAL from circuit court of Monroe county.

HON. C. P. LONG, Judge.

Suit by the E. L. Young Heading Company against John Barton Payne, Director General of Railroads and Agent of the United States. Directed verdict and judgment for the defendant, and the plaintiff appeals. Affirmed.

The appellant sued the appellee as Director General and Agent of the Illinois Central Railroad Company for an amount which appellant alleged represented freight charges unlawfully demanded and collected from the appellant by the appellee on nine carloads of rough sawed heading shipped to appellant from Longview to Aberdeen in this state. There are three counts in the declaration. It is averred in the first count that the freight rate charged and collected by the appellee from the appellant was in excess of the applicable tariff rate of said railroad on file with and approved by the State Railroad Commission, and therefore unreasonable and extortionate. In the second count it is averred that the freight charges demanded and collected by the appellee from the appellant were unreasonable and extortionate, setting out what would have been a reasonable charge as well as the amount charged and collected alleged to have been unreasonable and extortionate. And in the third count it is averred that the freight rate was agreed on and fixed between the appellant and the appel-

lee at four and one-half cents per one hundred pounds, and the same was set out in the freight bills covering the shipments in question as the correct rate, and therefore the appellee was bound by that rate because it was the contract rate. At the conclusion of the testimony the court gave an instruction at the request of appellee directing the jury to return a verdict in its behalf, which was done and judgment entered accordingly, from which the appellant prosecutes this appeal.

Beginning with December 6, 1917, and up to and including February 7, 1918, the appellant shipped over said railroad from Longview to Aberdeen six carloads of rough sawed heading for which it paid the appellee as freight four and one-half cents per one hundred pounds. Beginning with March 27, 1918, and including August 14, 1918, the appellant shipped over said road from Longview to Aberdeen three carloads of rough sawed heading, on the first of which it paid appellee seven and one-half cents per one hundred pounds, and on the other two cars nine and one-half cents per one hundred pounds. After the first six cars had been shipped on which appellant paid four and one-half cents per one hundred pounds freight, the appellee, claiming that an error had been made in the freight rate on said shipments, and that the tariff rate on file with and approved by the State Railroad Commission was seven and one-half cents per one hundred pounds up to and including June 24, 1918, and after that date nine and one-half cents, demanded of the appellant that it pay for said shipments the difference between four and one-half cents per one hundred pounds and seven and one-half cents per one hundred pounds, which appellant accordingly paid. The testimony shows that for the three cars shipped from March 27, 1918, and including August 14, 1918, the appellant paid on the first car seven and one-half cents per one hundred pounds freight, and on the other two cars nine and one-half cents.

The testimony introduced on behalf of the appellant tended to show that the freight charges demanded and col-

lected by the appellee were unreasonable and extortionate One of the witnesses on behalf of the appellant, who testified that he had had large experience in shipping this class of freight, stated that the charges demanded and collected by the appellee were unreasonable and unfair, and gave reasons for the statement which have a good deal of force, to say the least of it. For instance, it was shown that the rate of rough sawed heading from Aberdeen to Longview over the reverse route on said road was four cents per one hundred pounds from November 1, 1914, to June 24, 1918, and five cents from the latter date until August 5, 1919. And that on rough sawed heading from Starkville to Aberdeen in this state on the Mobile & Ohio Railroad, a distance of forty-two miles, four miles greater than from Longview to Aberdeen over the Illinois Central Railroad, the rate was two and one-half cents per one hundred pounds from April 1, 1911, to June 24, 1918, and three cents from June 25, 1918, to August 5, 1919. And that on the same material from Longview to Starkville in this state, a distance of only seven miles over the Illinois Central Railroad, the rate was four and one-half cents per one hundred pounds from June 6, 1910, to June 24, 1918, and five and one-half cents per one hundred pounds from January 1, 1914, to the same materials from Starkville to Longview over the Illinois Central Railroad, a distance of seven miles, three cents per one hundred pounds from Januray 1, 1914, to June 24, 1918, and four cents from June 25, 1918, to August 5, 1919. These rates of the Illinois Central Railroad Company and of the Mobile & Ohio Railroad Company were shown by certified copies of their tariffs on file with and approved by the State Railroad Commission.

The appellee introduced in evidence a certified copy of the Illinois Central Railroad published freight tariff on file with and approved by the Railroad Commission on certain materials named therein from Longview to Aberdeen which is in the following language, leaving out the formal parts:

"Bolts, heading, carload, from Longview, Miss., to Aberdeen, Miss., when for manufacture and reshipment via. the I. C. R. R., class N. per I. C. R. R. exceptions, under Note 23, to Southern Classification No. 43, I. C. C. No. 22, effective April 15, 1917, seven and one-half cents per one hundred pounds, up to and including June 24, 1918, and on and after June 25, 1918 to the present time, nine and one-half cents per one hundred pounds, per I. C. R. R. Freight Tariff No. 220-B, I. C. C. No. 5248, effective September 21, 1916. Upon reshipment from Aberdeen, Miss., via I. C. R. R. of the products of the bolts, heading, in accordance with the above, the rate to Aberdeen, Miss., from Longview, Miss., shall be reduced to two and one-half cents per one hundred pounds, up to and including June 24, 1918, and on and after June 25, 1918, to the present time, three cents per one hundred pounds, per I. C. R. R. Freight Tariff No. 590-K, I. C. C. No. 4854, effective September 19, 1913.

"On heading, rough sawed, carload, from Longview Miss., to Aberdeen, Miss., proper, Class N, per I. C. R. R. exceptions, under Note 23, to Southern Classification No. 43, I. C. C. No. 22, effective April 15, 1917, seven and one-half cents per one hundred pounds, up to and including June 24, 1918, and on and after June 25, 1918, to the present time, nine and one-half cents per one hundred pounds, as per I. C. R. R. Freight Tariff No. 220-B, I. C. C. No. 5248, effective September 21, 1918.

"We find no provision in the I. C. R. R. Tariff for reduced rates to Aberdeen, Miss., on heading, rough sawed, when the products of same are reshipped, as are provided for on bolts, heading, when the products are reshipped."

The evidence for appellant showed without conflict that rough sawed heading is about twenty-two inches in length, 3/4 of an inch thick, and about nine inches wide, and rough sawed or unfinished; that the nine carloads in question was rough sawed heading, and was shipped to Aberdeen and there, in the plant of the appellant, manufactured into finished heading; that heading bolts are logs quartered

lengthwise; that this entire lot of nine carloads of rough sawed heading, after being manufactured into finished heading, was by the appellant reshipped over the Illinois Central Railroad to other points.

*McFarland & Holmes,* for appellant.

The E. L. Young Heading Co. appellant, paid the I. C. R. R. Co. appellee, what they considered excessive freight charges on nine cars of rough sawed heading, shipped from Longview, Mississippi, a distance of thirty-eight miles, over the I. C. R. R. and brought this suit in the circuit court of Monroe county to recover the overpayment in the freight charge; from a judgment in favor of defendant, the plain-, tiff, heading company, appeals.

Appellant seeks recovery on four theories. (1) That the I. C. R. R. tariff shows no rate on 'rough sawed heading," speaking literally—in other words, there is no mention in the tariff of "rough sawed heading," and that being true the rate of four and one-half cents per one hundred fixed by the agent of defendant's railroad company in the waybill was authorized by law and should be held to be the rate. See 10. C. J. 220, and note 47; *Central R. R. Co.* v. *Mauser,* 49 L. R. A. (N. S.) 92, note at top of 2nd Column on page 100; *Cotton Mill* v. *G. & S. I. R. R. Co.,* 84 Miss. 339, on question of right of a railroad to fix a rate.

(2) If there was no tariff of charges on this article and no rate was fixed by the agent of defendant railroad company, then the law implies a reasonable compensation, to be measured by what is ordinarily charged for like services under like conditions, and that a reasonable rate therefor would be two and one-half cents per one hundred. See 10 C. J. 441, (694 2. a) ; *L. E. & St. L. R. R. Co.* v. *Wilson et al.,* 4 L. R. A. 244.

(3) That a rate was fixed in the tariff of charges of appellee covering this article, which rate was a milling in transit rate of two and one-half cents per one hundred on bolts, heading, as shown by I. C. R. R. Tariff No. 220 "B"

I. C. C. No. 5249, and tariff No. 590-K, I. C. No. 4854. See certificate of Mississippi Railroad Commission of March 3, 1919.

(4) That if the correct rate under the tariff of appellee was seven and one-half cents per one hundred, same was unreasonable and appellant should be given judgment for the excessive amount paid by them. We take it that the case of *Stone* v. *N. J. & C. R. R. Co.,* 62 Miss. 646, settles the proposition that the rate shown by the tariff of charges in only *prima-facie* correct, and the reasonableness of same may be inquired into by the court. See, also, *Cullen* v. *Seaboard R. R. Co.,* 58 So. 182, 10 C. J. 451, and notes. Also that it was not necessary for appellant to protest payment of the overcharge, if the court thinks he did not protest, although in our opinion the testimony shows that he did protest vigorously. See *Illinois Glass Co.* v. *Chicago Telephone Co.,* 18 L. R. A. (N. S.) 124.

On the first theory we call the court's attention to the fact that the tariff of appellee nowhere mentions "rough sawed heading" in so many words, and the agent of the railroad company fixed a rate of four and one-half cents per one hundred in the waybill, which rate appellant accepted as the correct rate and continued to ship heading on the strength of same.

On the second and fourth theories, that a reasonable rate should be charged where none was fixed by the tariff or by the agent of appellee, we call the court's attention to the certificate of the Mississippi Railroad Commission showing that the rate via the M. & O. R. R. from Starkville, Miss., to Aberdeen (being thirty-eight miles, was two and one-half cents per one hundred; also that the rate from Aberdeen to Longview, just the reverse of these shipments in this case, via appellee's road was four cents per one hundred for a regular haul, and two and one-half cents per one hundred (the same as the M. & O. R. R.) were for manufacture and reshipment. See certificate of Sept. 25, 1920. We also call the court's attention to the testimony of E. L.

Young and P. A. Dulin, agent of appellee, to the effect that in their opinion the rate was too high.

On the third theory, we earnestly insist that the tariff of appellee fixed a rate of two and one-half cents per one hundred on these shipments. The certificate of the Mississippi Railroad Commission of March 3, 1919, shows a rate of two and one-half cents per one hundred where the commodity is for manufacture and reshipment, the articles taking this rate being designated as "bolts, heading car loads. The commodity shipped by appellant and designated as rough sawed heading is nothing in the world but heading bolts. We think the case of *St. L. I. M. & S. R. R. Co.* v. *Hasty & Sons et al.,* U. S. Supreme Court Advanced Opinions, April 1, 1921, page 333, settles this case in our favor. This case is almost identical with the case at bar, and in the course of the opinion the court says: "It would appear that the raw material from which Barrell heads are made is variously described as rough heading, sawed heading, split heading and bolts or heading bolts; but it also appears that whatever may be the distinctions, the terms are used loosely and indiscriminately in the trade and in billing shipments, material of either description being considered rough material, and all having been handled by the railway company under the rough material rate on its own schedules, without regard to the particular terms.

We regard appellant's reading of item 79 as altogether too narrow. The scope and effect of the rough material rates should be determined not by regarding the opening sentence alone, but by looking also to the list of finished products to be manufactured from the material, and considering the general purpose of item 70— the purpose is manifest to give the benefit of the milling in transit rate to rough material out of which heading is manufactured, and no reason appears for limiting it to material of a particular description. The word "bolts," used in connection with staves and heading should be taken not as confining the privilege to rough material of a particular form, but in the generic sense in which it is employed in wood working,

as meaning: "A mass of wood from which anything may be cut or formed. (Century Dictionary). A block of wood from which something is to be made, as a single bolt, a stave bolt. Standard Dictionary); "(A block of timber to be sawed or cut into shingles, staves, etc.; (Webster's Dictionary).

*May, Saunders & McLaurin,* for appellee.

Responding to the court's inquiry and to appellant's supplemental brief, we respectfully submit the following: "When the shipments in question moved, appellee's tariff of rates provided the charges made and collected, as stated by the court in the quoted extracts from plaintiff's testimony. This tariff was promulgated and published under the authority and requirements of section 4842 of the Mississippi Code of 1906, section 7627, Hemingway's Code, and was therefore the proper and lawful rate and the only rate which could be properly applied. The shippers, including appellant, were conclusively presumed to know the lawful rate and if they conceived the same to be unreasonable and extortionate, had the remedy provided by section 4849, Miss. Code of 1906, sec. 7634, Hemingway's Code, to complain to the Mississippi Railroad Commission, that the charges are for more than just compensation. This statute provides in part as follows:

"The commission shall docket, hear and determine all complaints made of any tariff of rates, joint or several, made by any railroad or fixed or approved by the commission on the ground that—the charges are for more than just compensation. . . . The complaint must be in writing and specify the grounds of complaint or the items in the tariff against which complaint is made, and if it appear to the commission that the matter ought to be investigated, the commission shall forthwith furnish to the railroad a copy of the complaint, together with notice of the time and place of hearing; and at the time and place named, the commission shall hear the parties to the con-

troversy, in person or by counsel or both, and such evidence as may be offered, oral or in writing, and may examine such witnesses on oath, conforming the mode of proceeding as nearly as may be convenient, to that pursued by arbitrators, giving such time and latitude to each side and regulating the opening and closing of any argument as the commission may consider best adapted to arrive at the truth; and when the hearing is concluded, the commission shall give notice of any change deemed proper by it to be made, to the railroad and require compliance with its order."

This statutory procedure is the only method prescribed for the revision of the carrier's tariffs of charges and unless and until the tariffs are revised by the proper governmental agency, in the manner prescribed by this statute, the only lawful rate which the carrier is authorized to apply is that prescribed in the tariff published under the authority of section 4842, Miss. Code 1906, sec. 7627, Hemingway's Code, as above mentioned, and this rate was charged and collected in this case. A deviation from the tariff would subject the carrier to the penalties prescribed in sections 4844 and 4845, Miss. Code 1906, sections 7629 and 7630, Hemingway's Code. A judgment of this Honorable court condemning the rate in question, could have no retroactive operation and could only affect future shipments, and such judgment would therefore not relieve the carrier of the penalties prescribed for violating its tariff as long as it was in force. The statute made it mandatory upon the carrier to collect the rate shown in the tariff, and this being true, appellant is without cause to complain and has no right to recover.

The legislative schemes for revising tariffs would be rendered nugatory if shippers may be permitted to attack any given rate covered by the carrier's tariff, in a judicial proceeding before invoking the aid of the governmental agency designated by the legislature as the tribunal to fix and revise rates. The legislature has provided a complete scheme for the determination of reasonable transportation charges and has delegated that power to the state

railroad commission whose judgments may of course, be reviewed by the courts, but whose powers may not be usurped by the court's independent proceedings such as is here sought to be maintained.

The shipper must complain to the proper governmental agency, of any supposed unreasonable and extortionate rate, and if aggrieved by such decision, may resort to the courts. But the shipper may not, after paying charges established according to law, thereafter in a judicial proceeding, be heard to complain that the charges fixed according to law were improperly exacted and collected, and sue for a supposed extortionate charge. If this shipper may in this proceeding recover supposed excessive charges collected in 1918 under a tariff then in force, and subsequently applied, all shippers similarly situated may make similar recoveries for all payments made, whose claims are not barred by the statutes of limitation, although the tariff has never been condemned by the only tribunal having authority to revise it, and although no complaint has ever been made to such tribunal.

We respectfully reiterate that the proper judgment has been rendered and should be affirmed.

ANDERSON, J., delivered the opinion of the court.

(After stating the facts as above). The first question we will consider is as to what tariff rate was applicable to the shipment of these nine carloads of rough sawed heading from Longview to Aberdeen.

It is contended on behalf of the appellant that the tariff rate on heading bolts applied, which tariff provides for a milling in transit rate. It will be seen from this tariff on heading bolts that the rate prior to June 24, 1918, from Longview to Aberdeen was seven and one-half cents per one hundred pounds, and after that date and up to the time of the trial of this cause in the court below it was nine and one-half cents per one hundred pounds, and that the milling in transit clause in this tariff provides that upon reship-

ment from Aberdeen over the line of the Illinois Central Railroad the rate shall be reduced to two and one-half cents per one hundred pounds up to and including June 24, 1918, and after that date three cents per one hundred pounds. If this tariff on heading bolts applied, it is therefore evident that on the first six carloads of material in question the tariff should have been two and one-half cents per one hundred pounds, and on the other three cars three cents per one hundred pounds; instead of seven and one-half cents on the first six carloads and nine and one-half cents on the three carloads, the amount charged and collected.

The attorneys for the appellant rely on the case of *St. L., I. M. & S. Ry. Co. et al.* v. *Hasty & Sons et al.*, 255 U. S. —, 41 Sup. Ct. 269, 65 L. Ed. —, decided by the supreme court of the United States on February 28, 1921, as decisive of this question in favor of their client. The shipment involved in that case consisted of rough materials (perhaps rough sawed heading) shipped to the mill to be manufactured into finished heading for barrels, as was the case here. The nearest applicable tariff in that case was in this language:

"Rough material rates applicable on rough lumber, staves, flitches, bolts, and logs, carloads, between all points in Arkansas," etc.

There was no triff in specific terms covering rough heading, sawed heading, split heading, or heading bolts, which was the character of material shipped as shown by the evidence in that case. The supreme court held that rough heading, sawed heading, split heading, and heading bolts were covered by the language of the tariff above quoted.

In the absence of a freight tariff dealing specifically with rough sawed heading, under the authority of that case, the tariff rate on heading bolts would apply here because of being the nearest approach in description to the materials shipped. But in the present case, as shown above in the statement of the case, there was a tariff dealing specifically with the character of materials here shipped—rough sawed

heading. Whether there was any reason to apply a different tariff of charges on rough sawed heading from that on heading bolts, the court is unable to say. It would appear that there should be no difference; but, as will be shown later on in this opinion, that is a question for the Railroad Commission and not for the court in proceeding like this.

As shown by the tariff (rough sawed heading) the rate on the first six cars involved in this case was seven and one half cents per one hundred pounds, and on the other three cars at nine and one-half cents, which were the rates collected by the railroad company. There is no milling in transit rate on rough sawed heading, and why there should be on heading bolts and not on rough sawed heading does not appear. We conclude therefore that the rate collected by the railroad company was the published rate on file with and approved by the Railroad Commission.

Appellant contends, however, that even though it be a fact that the rate collected was in accordance with the published tariff on file with and approved by the Railroad Commission, still such rate was unreasonable, unjust, and extortionate, and under the law the appellant had a right to ignore it and recover the difference between a reasonable rate and such unreasonable rate approved by the Railroad Commission. The contention involves the question whether a railroad common carrier in this state under the law can charge less than the published tariff rate on file with and approved by the Railroad Commission.

Section 4842, Code of 1906, Hemingway's Code, section 7627, provides that the common carriers in this state shall furnish to the Railroad Commission their tariffs of charges for transporting passengers and freight, both intrastate and interstate, including joint tariffs with connecting lines, and that it shall be the duty of the Commission to revise such of said tariffs as are not subject to the exclusive regulation of Congress and determine in what particular any of the charges are more than reasonable compensation for the service to be rendered, etc., and provides further among other things:

"In revising, fixing and regulating charges for transportation, the Commission shall take into consideration the character and nature of the service to be rendered and the entire business of the railroad or other common carrier and its earnings from all kinds of traffic, and shall so revise, fix and regulate the charges as to allow reasonable compensation for the services to be rendered. It shall exercise a watchful and careful supervision over the tariffs of charges of every railroad and other common carriers, and shall revise the same from time to time, as justice to the public and the railroad and other common carriers may require; and shall increase or reduce any of the rates as experience and business operations show to be just."

And section 4844, Code of 1906, Hemingway's Code, section 7629, among other things, provides that: It shall be unlawful for any carrier to "allow any rebate or *reduction* [italics ours] from the tariffs of charges fixed or approved by the Commission in favor of any person, place or corporation, by a change in or deviation from the rate so fixed or approved, unless such change or deviation be first allowed by the Commission."

And in section 4839, Code of 1906, Hemingway's Code, section 7624, it is provided that if any railroad corporation shall demand and receive more than is allowed by the tariff of rates fixed by the Commission, such carrier shall be guilty of extortion and be punished criminally, besides being liable to civil action.

And section 4840, Code of 1906, Hemingway's Code, section 7625, provides that any person injured may recover of the carrier guilty of an extortionate charge twice the amount of the damages sustained by the overcharge or discrimination; and section 4841, Code of 1906, Hemingway's Code, section 7626, that if any railroad shall be guilty of extortion as defined by the supervision statutes, it shall be punish as a misdemeanor, and on conviction fined not less than one hundred dollars, but that the carrier shall not be punished criminally if its tariff of charges shall have been approved by the Commission and is not variant from that

thereby allowed; and section 4845, Code of 1906, Hemingway's Code, section 7630, that if any railroad shall make any rebate or *reduction* (italics ours) or allowance of any freight or passenger rates from the rates fixed and approved by the Commission, without the consent of the latter, it shall be guilty of a misdemeanor and shall be fined not less than one hundred dollars on conviction.

And section 4849, Code of 1906, Hemingway's Code, section 7634, provides for the hearing of complaints by persons interested in the tariff of rates, joint or several, made by any railroad, or fixed or approved by the Railroad Commission, on the ground that the same are unjust and unreasonable, and that complaints shall be in writing specifying the grounds of complaint, including the items in the tariff against which complaint is made, a copy of which the Railroad Commission is required to serve on the carrier with notice of the time and place of hearing the complaint; at which hearing the parties are allowed to introduce evidence, both oral and written; and the Railroad Commission is authorized to make such change in the tariffs, etc., of the carrier as it may deem just and right, and require compliance therewith by such carrier.

It therefore plainly appears from the language as well as the spirit of these statutes that the outstanding purpose in their enactment was that there might be fixed and stable freight rates, as well as reasonable and just rates; that all shippers should pay exactly the same rate for like service; and to that end, that all tariffs should be published by the carrier and filed with and approved by the Railroad Commission; and that no carrier should charge either more or less than such rates so fixed; and for an excess charge the carrier is made liable both criminally and civilly, and where the charge is less than the tariff so fixed, it is made criminally liable.

The shipper is furnished by the statute (Code of 1906, section 4849, Hemingway's Code, section 7634) with a remedy for any extortionate rate authorized by such tariffs by means of complaint to the Railroad Commission, and

after a hearing that body is fully authorized (when shown to be unjust) to reduce any rate, and enforce compliance therewith by the carrier.

If the contentions on behalf of the appellant were sound, the whole scheme and plan of the supervision statutes would be upset, because varying judgments might be rendered by different courts in suits brought by different shippers, even though each case was based upon identically the same state of facts. Thus instead of having uniform and fixed rates the result could and might be a different rate for every shipper, who chose to go into court in a suit against the carrier to test an alleged overcharge. And furthermore it is evident that in such a suit, especially in a court of law, it would be impracticable to put before the court the evidence as to the reasonableness of the rate in question based on the considerations named in said section 4842, Code of 1906, Hemingway's Code, section 7627, which requires that the evidence shall be addressed to the nature of the service to be rendered by the carrier, its entire business, and its earnings from all kinds of traffic.

This court held in *Stone* v. *Railroad Co.,* 62 Miss. 646, that the action of the Railroad Commission in fixing rates for common carriers was nnly *prima-facie* correct and sub-ject to judicial review. But the principle declared in that case has no application here for the reason that that was a direct proceeding in the courts by the carrier for the purpose of testing the rate-making power conferred on the Commission. That was a direct attack upon the action and power of the Commission. This proceeding in the present case is in the nature of a collateral attack on the action of the Commission, and in such a proceeding the action of the Commission fixing the rates is unassailable and conclusive. The shipper has the remedy alone of going before the Railroad Commission in the character of proceeding provided by the statute for the purpose of having the rate complained of revised.

It is true that section 4839, Code of 1906, Hemingway's Code, section 7624, provides among other things that a

railroad common carrier shall. not demand and receive unreasonable compensation for the service rendered in the transportation of passengers or freight. But this provision must be construed in connection with other sections of the statute referred to in this opinion. So construed, this clause of the statute could have no application to rates which had been submitted to and approved by the Railroad Commission. It was intended to cover freight charges in cases alone where the carriers had failed to have their tariffs filed with and approved by the Commission.

Appellant relies on the principle laid down in 10 Corpus Juris, 451, and the cases cited in the notes, especially *Cullen* v. *Railroad,* 63 Fla. 122, 58 So. 182, to the effect that an observance by the carrier of the rate fixed by the Commission will not defeat a common-law action for a charge in excess of a reasonable rate. An examination of the cases cited to support this text (so far as we have been able to peruse them) shows that the statutes there involved only provided for the fixing of maximum rates by the Commission, and not rates neither above nor below which the carriers were allowed to charge, as does our statutes. In 10 Corpus Juris, 451, section 709, it is stated further that under statutes giving the Commission the power to fix rates and hear complaints of persons aggrieved by the rates, the common-law remedy is not saved.

And it is contended further on behalf of the appellant that the rate of four and one-half cents per one hundred pounds agreed on by the shipper and the carrier in this case and set out in the waybills was a binding contract as to the first six cars shipped, and therefore the carrier could charge no more, notwithstanding its tariff on file with and approved by the Railroad Commission expressly permitted the higher charge which was made. This contention is based on a clause in section 4839, Code of 1906, Hemingway's Code, section 7624, in this language, "or more than the rate specified in a bill of lading issued by authority of the railroad." Constructing this provision in connection with the other sections of the statute, which should be done,

127 Miss.—5

and it is clear that it was intended to cover alone shipments where there is no applicable tariff rate on file and approved by the Commission, and where the carrier and the shipper agree on a rate, and embody the same in the bill of lading.

We find no error in the action of the trial court in directing a verdict for appellee.

*Affirmed.*