MONTANA HORSE PRODUCTS CO., RESPONDENT, *v.* GREAT NORTHERN RAILWAY CO., APPELLANT.

(No. 6,845.)

(Submitted November 7, 1931. Decided January 4, 1932.)

[7 Pac. (2d) 919.]

*Mr. W. L. Clift,* and *Mr. R. J. Hagman* and *Mr. J. P. Plunkett* of the Bar of St. Paul, Minnesota, for Appellant, submitted a brief; *Mr. Plunkett* argued the cause orally.

*Messrs. Kremer, Sanders & Kremer,* for Respondent, and *Mr. Francis A. Silver,* Counsel for the Board of Railroad Commissioners, submitted a brief; *Mr. Louis P. Sanders* and *Mr. Silver* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff in the district court of Silver Bow county to recover damages from the defendant in the sum of $7,512.25, alleged to have been suffered by reason of unjust and unreasonable freight charges collected by the defendant in Silver Bow county for the transportation over its lines to Butte from various points in this

state of 166 carloads of range horses suitable only for slaughter and canning purposes, between June 25 and September 26, 1927. Issue was joined by answer and reply, and the cause was submitted to the court for decision upon an agreed statement of facts. The court found in favor of the plaintiff in accordance with the prayer of its complaint and entered judgment accordingly, from which the defendant has appealed.

The only question presented by the defendant's assignments of error, necessary for consideration in disposition of this appeal, is whether under the laws of this state the board of railroad commissioners has power and authority to make a retroactive order finding that the rates charged and collected on the shipment of such horses (which rates had been previously approved by the board) were unjust and unreasonable, thus permitting the plaintiff to recover the difference between the amount charged and collected and the amount found by the commission to be a reasonable rate.

There is no dispute as to the facts, from which it appears that on April 8, 1926, the Great Northern Railway Company filed with the board of railroad commissioners its petition for authority to file and make effective upon one day's notice a freight tariff, prescribing new rates from various Montana points on its line to the city of Butte upon range horses suitable chiefly for slaughter; that on April 14, 1926, such petition was allowed, the authorization being designated "Montana R. C. No. 1828," and on April 14, 1926, the railroad company filed such tariff to become effective April 21, 1926, being known and designated as "G. N. Ry. G. F. O. No. 2508–A." Subsequently, during the period from June 25, 1927, to September 22, 1927, both inclusive, the plaintiff shipped from various points within the state over the defendant's lines to the city of Butte, 166 carloads of range horses chiefly valuable for slaughter, and made payment of freight charges thereon on the basis of the tariff designated "G. N. Ry. G. F. O. 2508–A, Montana R. C. Authorization No. 1828." In consequence, the railway company received and collected on such shipments the aggregate sum of $15,024.50, which amount

so charged and imposed by the railway company and paid by the plaintiff was computed on the basis of the rates contained in tariff G. N. G. F. O. No. 2508–A, published by it under authorization of the board of railroad commissioners, which had not been canceled or superseded prior to September 24, 1927, and "was the only tariff in effect naming rates on horses suitable for slaughtering," from Montana points on the defendant's railroad to Butte, during the period from June 25 to September 22, 1927. By letter under date of June 12, 1927, the board of railroad commissioners requested the defendant Great Northern Railway Company, the Northern Pacific Railway Company, and the Chicago, Milwaukee & St. Paul Railway Company to reduce their then existing rates to Butte by 50 per cent. The Chicago, Milwaukee & St. Paul Railway Company responded to the board's suggestion, agreeing to a 50 per cent. reduction effective June 24, 1927; the Northern Pacific Railway Company did likewise, effective September 22, 1927. On July 14, 1927, the defendant Great Northern Railway Company declined to make such reduction, but later, on September 21, 1927, it communicated with the board and requested authority to make such half rates effective at once, and the necessary authority having been given, they became effective as to the Great Northern Railway Company September 24, 1927.

On April 9, 1928, the plaintiff filed with the board of railroad commissioners its complaint against the defendant railway company alleging that the rates charged and the freight charges collected from and paid by the plaintiff on such horse shipments were unjust and unreasonable to the extent that they exceeded 50 per cent. of the rates named in G. N. Ry. G. F. O. No. 2508–A. Due service of the complaint was made upon the defendant railway company, but it did not file any answer or make other appearance, or offer objections. The matter was noticed for public hearing and the defendant was duly notified of the time and place, but failed to make appearance at the hearing, or at any time, to raise objection to the proceedings or the relief sought by the plaintiff, and did not offer any evidence at the hearing. After

the conclusion of the hearing, on November 4, 1929, the board of railroad commissioners found and adjudged that the rate charged on such shipments and collected by the railway company was unjust and unreasonable to the extent that it exceeded 50 per cent. of the published rates filed with the board. In the order, among other things, it is stated, so far as here pertinent, that: "If, then, the rates on range horses that became effective on September 24, 1927, were reasonable rates, and in the circumstances we are convinced that they were, we are likewise of the opinion that the rates paid on the shipments involved in this complaint were unreasonable and excessive to the extent that they exceeded fifty per cent. thereof, and it is so held. *From this conclusion it should not be understood that the fact that a rate has been reduced, in and of itself, makes for findings of unreasonableness prior thereto.* * * * It is ordered, decreed and found, that the Montana Horse Products Company, a corporation, made the shipments described in the complaint herein and between the dates therein named; that said complainant paid and bore the charges thereon on the basis of the rates published in the tariffs of the defendant and on file with the board, in the amount of $15,024.50 and that the charges paid and bore [borne] as aforesaid were and are unreasonable to the extent that they exceeded or exceed the charges that would have accrued thereon on the basis of fifty per cent. of the rates published and imposed as aforesaid, to-wit: the sum of $7,512.25."

The powers of the board of railroad commissioners in the regulation of railroads are prescribed by Chapter 257 of the Revised Codes of 1921. By section 3794 it is provided, so far as pertinent, that power and authority is by the Act vested in the board of railroad commissioners, and it is thereby made its duty "to adopt, as soon as practicable, * * * all necessary rates, charges, and regulations to govern and regulate freight and passenger tariffs, to correct abuses, and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this state, and to *make the same effective by enforcing the penal-*

*ties prescribed in this Act.* The said board shall have the power, and it shall be its duty, to fairly and justly classify and subdivide all freight and merchandise of whatsoever character that may be transported over railroads of this state, into such general and special classes or subdivisions as may be deemed necessary or expedient. The said board may fix different rates for different railroads and for different lines under the same management, or for different parts of the same lines, if found necessary to do justice, and may make rates for express companies different from the rates fixed for railroads.''

Section 3803 provides that the determination of the board fixing any classification or rate may be reviewed by the district court. Section 3804 reads, in part: ''If any railroad subject hereto, directly or indirectly or by any special rate, rebate, draw-back, or other device, shall charge, demand, or receive from any person, firm, or corporation, a *greater or less compensation* for any service rendered, or to be rendered, in the transportation of property subject to the provisions of this Act, than that fixed by the said board of railroad commissioners for such service,'' shall be subject to the payment of heavy penalties prescribed.

Section 3805 makes any railroad subject to the Act guilty of extortion for charging or collecting from any shipper a greater rate than that established by the board of railroad commissioners, and prescribes penalties.

Section 3806 provides that the district court shall have jurisdiction to enforce the rates, classifications, rulings, and orders made or established by the board, and section 3807 provides for appeals to this court from the judgment of any district court in any action arising under the provisions of the Act.

Section 3796 provides that the board of railroad commissioners ''shall have the power from time to time to change, alter, amend, or abolish any classification or rate established by it when deemed necessary, and such amended, altered, or new classifications or rates shall be put into effect in the same

manner as original classifications. * * * The said board must, within forty days after the filing with such board of a complaint by a shipper, or other person interested, proceed to investigate and determine the justness and reasonableness of any classification, rate, charge, toll, regulation or order made by said board.''

Section 3797 provides that the board shall have the general supervision of all railroads, express companies, car companies, sleeping-car companies, freight and freight line companies, and any common carrier engaged in the transportation of passengers or property in this state, in all matters appertaining to the duty of the board and within its power and authority under the provisions of the Act. It shall investigate any alleged neglect or violation of the laws of the state by any railroad or other company above specified doing business therein.

Section 3803 provides that the determination of the board fixing any classification or rate or the refusal of the board to fix such classification or rate may be reviewed by the district court. Sections 3804 and 3805 provide that if any railroad shall charge or receive a *greater or less* compensation for any transportation service performed than that fixed by the board for such service, the railroad shall be liable to the payment of heavy penalties for such violation. Section 3806 provides that the district court shall have jurisdiction to enforce the rates, classifications, rulings, and orders made or established by the commission. Section 3807 provides for appeals to the supreme court from the judgment of the district court.

Section 3808 provides that any sum paid to a railroad in excess of the rates fixed by the board for such service may be recovered from the railroad in an action instituted in the district court of the county in which such payment was made, provided such action is brought within twelve months from the date of such payment.

Section 3809 provides that any railroad may bring an action in the district court of the county where its principal office or place of business is situated, or any county where such

rate, or classification of the board is made applicable, to determine whether or not any such rate or classification is just and reasonable, "provided, that *until the final decision* in any such action the classification, rate, toll, charge, regulation, or order of the board affecting rates or charges *shall be deemed to be final and conclusive.*" Section 3810 provides that any shipper may bring an action in the district court to determine whether or not any such rate or classification is just and reasonable. It also provides "that *until the final decision* in any such action, the classification, rate, toll, charge, regulation, or order of the board affecting rates or charges *shall be deemed to be final and conclusive;* \* \* \* and provided further, that in any action, hearing, or proceeding in any court, the classifications, rates, tolls, charges, regulations, and orders made, fixed, and established by said board shall *prima facie be deemed to be just, reasonable, and proper.*" Sections 3811 and 3812 provide further penalties for violation by a railroad of any order of the commission. Section 3816 makes it the duty of the board to see that the provisions of this section and of all laws concerning railroads are enforced and obeyed.

From the foregoing analysis of our statutes it appears that the board is given the power and it is made its duty to prescribe all intrastate rates for the transportation of freight and passengers, and that when so established, carriers are forbidden under severe penalties prescribed to charge more or less than those fixed by the board. Shippers are given the right to maintain an action to recover any amount charged by the carrier in excess of the fixed rates, and either the shippers or the carriers may appeal to the courts where it is contended that the rates established by the board are unjust or unreasonable. There is no provision in the law giving the board authority to find that a rate fixed by it *was in the past* unjust or unreasonable, its powers being limited to the changing or modification of existing rates *as to the future.* And as seen by the provisions of section 3794, the board is commanded to make the rates by it established effective "*by enforcing the penalties prescribed in this Act.*" Not otherwise.

As noted from the language employed, the statutes of Montana respecting the making of rates differ materially from the Interstate Commerce Act, and the laws of many other states, in that under our statutes the rates are established by the board of railroad commissioners, whereas under the provisions of the federal Act (36 Stat. 554, 49 U. S. C. A., sec. 16) and those of some other states, the rates are fixed by the carriers with power to review their reasonableness vested in the regulatory body. Our statute differs from the federal Act in that under the federal Act the Interstate Commerce Commission is authorized to order payment by way of damages in reparation by reason of an unreasonable, unjust, or discriminatory rate fixed by the carrier and exacted of a shipper, whereas under our law the schedule of rates approved by the board are declared to be deemed *prima facie* just, reasonable, and proper, and until final decision by the district court in an action by a railroad or by a shipper or person interested, *"the classification, rate, toll, charge, regulation, or order of the board affecting rates or charges shall be deemed to be final and conclusive"* (secs. 3809–3810), and the carrier is made subject to heavy penalties for charging a greater or lesser rate than that established by the board (3804, 3805, 3811, 3812) and declared to be guilty of extortion for charging or collecting a greater rate than that established by the board (sec. 3804).

Counsel for the railway company, for the shipper, and for the board of railroad commissioners, all agree that the holding of this court in the case of *Doney* v. *Northern Pac. Ry. Co.*, 60 Mont. 209, 199 Pac. 432, 439, is controlling in the cause now before us; but they are not in accord in interpreting the conclusions reached and the force and effect of that decision. In our opinion, that decision properly understood and interpreted, is conclusive in this case. There we held in effect, and on more mature consideration we think we were correct, that a tariff duly filed with and published by the board of railroad commissioners has the force and effect of a statute binding alike upon the shipper and carrier until

changed or modified by the board; and that the shipper's remedy provided by section 3808, where excess rates have been charged and exacted by a railroad, is by an action to recover the amount paid "in excess of the rates, tolls, or charges fixed and established by the board for such service," provided the action is commenced in the district court of the county within which the payment was made, within a period of twelve months from the date of payment. We further held that there *is no provision in the Railroad Commission Act giving the board power to make rates retroactive,* and that there is no express provision authorizing the board, in the event that it determines under section 3796, or the court determines under section 3803 or 3810, "that any rates fixed by the board is unjust or unreasonable, to allow reparation to the shipper for the amount paid during the time such rate as fixed by the board was in force. The rate established by the board being *prima facie* a valid and reasonable rate, presumption as to its validity and reasonableness will be indulged, *until its unreasonableness or discriminatory character is found by the board itself.* Upon change made in the rate by action of the board, this presumption ceases. * * * The shipper's remedy is to promptly have the rate modified, if unreasonable, by the commission, or to have the reasonableness thereof determined by a court in an action to review the reasonableness of the rates as fixed and established. * * * Plaintiff's remedy was to apply to the Railroad Commission for a modification of the rate established or for the fixing of a rate in the event no rate had been established, and upon its refusal to grant relief as against an alleged excessive or discriminatory rate, he is entitled to have the matter determined by a court of competent jurisdiction. The statute differs from the federal Act in that under the latter Act the Interstate Commerce Commission is expressly authorized to order the railroad to pay to the complainant the sum it may find he has been damaged by reason of an unjust rate or discrimination in violation of the Act (36 Stat. 554; U. S. Comp. Stats. 8584 [49 U. S. C. A., sec. 16]), while under the state Act repara-

tion may only be had in a court proceeding based upon the findings and records of the board of railroad commissioners (sec. 4389, Rev. Codes). * * * Were this not the correct procedure under the statute, great and inevitable confusion and uncertainty would result, as there might arise a multiplicity of suits with varied determinations in the several jurisdictions of the state.''

In the decision in that case we note an inconsistency in the opinion, embraced in two paragraphs appearing on page 236 of 60 Mont., 199 Pac. 432, 440, which read as follows: ''The reasoning of the above cases applies with equal force to our statute and to the lack of jurisdiction of · the courts to pass upon the reasonableness of the rates and discriminations before the Commission has taken action thereon. In other words, before any shipper can recover in the courts damages for excess rates or discriminations, the discrimination or unreasonableness of the rate must first be passed upon by the special tribunal expressly created and authorized by law to handle such matters—the Railroad Commission.

''The fact that the Railroad Commission is not authorized, upon determining that a rate is unreasonable or discriminatory, to order reparation, does not prevent a shipper, after the rate has been so determined by the special tribunal created for that express purpose, from maintaining an action in court to recover damages sustained by him as a result of such unreasonable or discriminatory rate. His action is based upon the fact that such rate has been so declared by the proper tribunal, and the court merely determines the amount of damages, if any, sustained.''

In view of the conclusions theretofore reached in that opinion, these paragraphs of the decision are not supported by the language employed, by the plain language of our statutes, or by the primary holding in that decision, were not necessary to a decision of the case, and have no proper place in the opinion. They are hereby expressly overruled, as is also any other language in that opinion at variance with this decision. Having written that opinion for the court, the author hereof ex-

presses apology for having misled the profession, and welcomes this opportunity to correct the error made in interpreting our statutes. A correct interpretation of our statutory law upon the subject is a matter of greatest importance to shippers, to the board of railroad commissioners, and to the carriers. The province of this court is to interpret the law as it finds it rather than to legislate.

Rates under the Interstate Commerce Act are voluntary rates initiated and filed by the carriers, rather than rates prescribed or approved by the commission as under our laws. (*Doney* v. *Northern Pac. Ry. Co.*, supra; *Mathieson Alkali Works* v. *Norfolk & Western Ry.*, 147 Va. 426, 137 S. E. 608; *Miller Mill Co.* v. *L. & N. R. R.*, 207 Ala. 253, 92 South. 797; *Interstate Commerce Com.* v. *L. & N. R. Co.*, 227 U. S. 88, 57 L. Ed. 431, 33 Sup. Ct. Rep. 185.) And the Interstate Commerce Commission is given power by the Act to declare a rate unreasonable or discriminatory retroactively and to award reparation. No such power is given to the commission under our statute; but rather it is required by our laws on the subject to establish the reasonableness of freight tariffs published and "to make the same effective by enforcing the penalties" prescribed in the Act.

The principle is well established that to determine whether a shipper has in the past been wronged by the exaction of an unreasonable or discriminatory rate is a judicial act, and when the commission finds a rate which has been charged and collected unreasonable, it is exercising a quasi-judicial function. To determine what rate shall be charged in the future is a legislative or administrative act, and when a commission prescribes a rate which shall be charged in the future, it is exercising a quasi-legislative function. (*Interstate Commerce Com.* v. *Cincinnati, New Orleans & Texas Pac. Ry. Co.*, 167 U. S. 479, 42 L. Ed. 243, 17 Sup. Ct. Rep. 896; *Louisville & National Ry. Co.* v. *Garrett*, 231 U. S. 298, 58 L. Ed. 229, 34 Sup. Ct. Rep. 48; *Great Northern Ry. Co.* v. *Merchants' Elevator Co.*, 259 U. S. 285, 66 L. Ed. 943, 42 Sup. Ct. Rep. 477; *Atchison, T. & S. F. Ry. Co.* v. *Arizona Grocery*

*Co.*, (C. C. A.) 49 Fed. (2d) 563.) A determination of the unreasonableness of an existing tariff by the commission does not interfere with rates paid while it existed, since it constituted the legal rate and the only one upon which the carrier could base its charges under severe penalties. After any such determination of unreasonableness by the commission, a quasi-judicial act, a new tariff in consequence established or approved by it as an administrative function, necessarily operates only upon future shipments. As to past transactions neither the shipper nor the railroad has any right of reparation where the rate charged and paid was that established by ██ the commission. Common-law rights of the shipper are superseded by the statute.

It is plain that under our law a carrier is prohibited from collecting for any service rendered either more or less than the rates fixed by the board. In conformity with such established rates, and during the time they were in effect, between June 25 and September 22, 1927, the plaintiff shipped 166 carloads of horses over its lines to Butte for slaughter, for which service the plaintiff as shipper paid the rates prescribed by the board, which were the only rates then in effect. On September 21, 1927, the defendant railroad requested authority to reduce its rates on such horses 50 per cent., effective at once, and authority was granted to it to make such reduction September 24, 1927. However, such voluntary reduction of the rate by the carrier did not make the prior rate unlawful, unreasonable, or discriminatory, or the basis of an action for damages. (*Doney* v. *Northern Pac. Ry. Co.*, supra.)

The case of *Mathieson Alkali Works* v. *Norfolk & Western Ry.*, above cited, arose under statutory provisions like our own, and a similar state of facts. The action was against the carrier to recover overcharges. The charges complained of were fixed by the commission by tariffs filed and approved in conformity with the statute, and the charges exacted were not in excess of those thus established by the commission. It was held by the supreme court of Virginia, and we think correctly, that since the charges were in accordance with the rates pre-

scribed by the commission, the plaintiff could not recover for overcharges, notwithstanding a subsequent finding by the commission that the rates so prescribed were unreasonable. (See, also, *Eagle Cotton Oil Co.* v. *Southern Ry. Co.*, (D. C.) 46 Fed. (2d) 1006.)

In *Miller Mill Co.* v. *L. & N. R. R. Co.*, 207 Ala. 253, 92 South. 797, 800, the supreme court of Alabama reached the same conclusion in a case involving somewhat the same state of facts, and the courts of other states where, under the law, the rates are prescribed by the regulatory board, have held that such board is without authority to declare such rates unreasonable retroactively. (*Young Heading Co.* v. *Payne*, 127 Miss. 48, 89 South. 782; *Texas & P. Ry. Co.* v. *Railroad Com.*, 137 La. 1059, 69 South. 837; *Northern Pac. Ry. Co.* v. *Department of Public Works*, 136 Wash. 389, 240 Pac. 362, 364; *Producers' Refining Co.* v. *Missouri, K. & T. Ry. Co.*, (Tex. Com. App.) 13 S. W. (2d) 680.) In the case of *Miller Mill Co.* v. *L. & N. R. R. Co.*, supra, the court held that: "Manifestly there can be but one lawful rate in force at any given time, and that rate by the very terms of the statutes quoted, is the rate which has been filed with and approved by the Commission, and published by the carrier. Behind that rate, so long as it remains unchanged, and so far as its application to specific shipments is concerned, neither shipper nor carrier can go, and courts cannot inquire." (Citing *Adams* v. *Central of Georgia Ry. Co.*, 198 Ala. 433, 73 South. 650.)

In the case of *Northern Pac. Ry. Co.* v. *Department of Public Works*, supra, it appeared that the original order of the department of public works fixed rates on intrastate shipments of certain wood on the basis of 128 cubic feet per cord, and later in a supplemental order fixed the basis on 192 cubic feet per cord. The court held that: "It is manifest, therefore, that since all the shipments complained of by the Roosevelt Transfer & Fuel Company were received during the period when the department order was in force fixing the standard at 128 cubic feet per cord, there was nothing illegal in what appellant did. The rates and standards were in

force, and while in force were the only lawful rates and standards. (*Chicago, B. & Q. R. Co.* v. *Merriam & Millard Co.,* (C. C. A. 8) 297 Fed. 1.) The orders of the department were prospective and in no way retroactive by their own terms.'' See also construction placed on Arizona statute of similar import, in case of *El Paso & S. W. R. Co.* v. *Arizona Commission,* (D. C.) 51 Fed. (2d) 573.

In the case of *Producers' Refining Co.* v. *Missouri, K. & T. Ry. Co.,* supra, the court held that where the Railroad Commission pursuant to its duty fixed a rate as reasonable to be charged by a railroad, the carrier had no option other than to comply with the law under pain of severe penalties prescribed by the statute. This is in accord with our views of the proper construction to be placed upon the statutes of Montana. Undoubtedly our laws authorize an interference with the managerial function of carriers in the fixing of tariffs, but since such is the system prescribed by our law-making body, it must be followed until such time as it is changed or modified by legislative fiat. It truly would be an anomalous situation, were the commission, acting as a quasi-judicial tribunal, permitted to find that the carrier had violated the law because it charged a rate prescribed by the commission itself, acting in its legislative capacity. The commission's findings, lowering the rates upon finding existing rates unreasonable, are not, and could not lawfully be made, retroactive; and it is noted that it did not attempt to make it so. In the order it is stated that from the conclusion reached as to the unreasonableness of existing rates it is ''not to be understood that the fact that the rate has been reduced, in and of itself, makes for findings of unreasonableness prior thereto.''

Under our statutes, so long as the rates established by the commission are in force, they are presumed to be reasonable, and neither the commission nor the courts have power retroactively to declare such established rates unreasonable, and thus permit the recovery of damages to the extent of the overplus paid by a shipper or an undercharge collected by the carrier.

But what of the effect of our misinterpretation of the law in the *Doney Case* above noted? While it is of the greatest importance that our statutes be properly interpreted and applied in the future administration of the law, what is to be said as to the shipper's rights in this action in consequence of our former decision as respects the shipments in question? It is to be noted that the rates exacted by the defendant railway company were by the shipper paid under protest and that later, upon application made to the board by the shipper, they were declared to be unreasonable to the extent that they exceeded 50 per cent. of the published tariffs. As respects the shipper's rights in the premises the holding in the *Doney Case* above set forth was carefully followed.

In application of the doctrine of *stare decisis* a decision of ■ this court is authority upon the points actually involved, presented and argued by counsel, and passed upon. Accordingly, the language employed in the *Doney Case* above noted is not merely to be considered as *obiter dictum*. After our statutes had received such erroneous construction by this court, the shipments were made and the rates approved by the board of railroad commissioners paid under protest. It must be concluded that the holding in that case gave just basis for the claim of the shipper although the decision in that case now appears to us to be manifestly erroneous, and the shipper's demand should not now be lightly considered or impaired by reason of a change in construction of the statutes by this court. All that is necessary to make a decision of this court authoritative is that there shall appear to have been an application of the judicial mind to the precise question adjudged and that the point was fully considered (*Spratt* v. *Helena Power Transmission Co.*, 37 Mont. 60, 94 Pac. 631), all of which appears to have been done in the *Doney Case*, and such decision must be considered as controlling until reversed by this court.

In the *Doney Case,* this court apparently fell into the error above pointed out in consequence of the concessions made by counsel for the railway company in support of their conten-

tion respecting the insufficiency of the complaint, in argument that our statutes dealing with the regulation of rates must not be ignored, and have superseded the common-law right of action, which common-law right was relied upon as the basis of Doney's complaint. However, that the decision in that case was fully considered by the court is apparent upon reference to the report thereof and the fact that upon a petition for a rehearing therein the same was denied. We were then apparently satisfied with the correctness of the holding, and thenceforth the profession and others were entitled to place reliance thereon. The construction of the statutes made by this court in that case had been acted upon by the shipper, the carrier, and the Railroad Commission, and undoubtedly gave rise to the procedure adopted by the shipper in this instance and to the present cause of action. It would be manifestly unjust and improper to deprive the shipper of its legal right to recover the excessive amount of tariff exacted by the railway company as pronounced by this court simply because of the later opinion expressed by this court repudiating its former decision. (*Montana Nat. Bank* v. *Yellowstone County*, 276 U. S. 499, 72 L. Ed. 673, 48 Sup. Ct. Rep. 331.) The decisions of this court are controlling until reversed or modified by the court itself.

But what of the rights of the carrier as a result of our present views as to the proper construction to be given our statutes? In our opinion, in all justness and fairness it cannot be said that the carrier has, as a result, been injured, for it must have appreciated its liability under the holding of this court in the *Doney Case*. Furthermore, it appears that in reliance upon the holding in the decision in that case negotiations were under way by which the carrier proposed to make settlement with the shipper allowing reparation to the extent that the rates charged by the carrier under the published tariff at the time the shipments were made were found by the board of railroad commissioners to be unreasonable. It must also be remembered that on June 12, 1927, prior to the time the shipments involved were made, the board of rail-

road commissioners by letter called the defendant railway company's attention to the excessiveness of the then existing published tariff for the shipment of wild horses and requested it, as well as the Chicago, Milwaukee & St. Paul Railway Company and the Northern Pacific Railway Company, to reduce the then existing tariffs by 50 per cent. The Milwaukee Railway Company at once responded to the board's suggestion and the reduced rate over its lines became effective June 24, 1927. As to the defendant railroad company, it at first declined to make the proposed reduction, but later, on September 21, 1927, requested the commission to permit it to put into effect such proposed reduced rate on one day's notice, and such reduction in tariff, having been allowed by the commission, became effective on September 24, 1927. Later, on April 9, 1928, following the procedure prescribed in the *Doney Case*, of which the carrier was cognizant, the plaintiff filed its complaint with the board of railroad commissioners charging that it had theretofore on shipments made by it between June 25 and September 26, 1927, been overcharged by the defendant to the extent that the rates prescribed in G. N. Ry. G. F. O. No. 2508–A exceeded 50 per cent. of said tariff, and although the defendant company was duly served with notice, it made no appearance in the proceeding and offered no objections whatsoever to the plaintiff's complaint. Before the reduction of the tariff, by letter addressed to the commission dated September 21, 1927, the defendant railway company appears to have voluntarily admitted the excessiveness of the rate by it theretofore charged under G. N. Ry. G. F. O. No. 2508–A, with consequent reduction of the rate by 50 per cent., which became effective September 24, 1927, in consequence of the board's approval. Therefore, no injustice will now result to the defendant railway company in requiring it to make reparation as to such shipments under the law as declared by this court, in existence at the time the shipments were made; and for the future the board of railroad commissioners, shippers, carriers, and the public will have the benefit and advantage of a more accurate and consistent interpretation of the

law. If we were permitted to adhere to the erroneous construction of the statute announced in the *Doney Case,* greater mischief would follow than can possibly result from the operation of the statute as now, we think, correctly, interpreted. Justice is in consequence done in this case without injury because of our previous holding.

For the reasons stated the judgment will stand affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN and MATTHEWS concur.

MR. JUSTICE FORD: I concur in the result reached, but not with much that is said in the opinion.

---

ON MOTION FOR REHEARING.

(Filed February 5, 1932.)

MR. JUSTICE GALEN delivered the opinion of the court.

The supreme court of the United States, in a decision rendered on January 4, 1932 (the very day the opinion herein was announced), in the case of *Arizona Grocery Co.* v. *Atchison, Topeka & Santa Fe Railway Co.,* (U. S.), 52 Sup. Ct. Rep. 183, 185, on writ of certiorari to the circuit court of appeals for the ninth circuit [49 Fed. (2d) 563], agrees with our views expressed in this case, that commission-made rates do not warrant reparation on shipments made during their existence upon a subsequent determination of excessiveness.

In the majority decision in that case Mr. Justice Roberts, speaking for the court, said: "When under this mandate [of the Interstate Commerce Commission Act] the Commission declares a specific rate to be the reasonable and lawful rate for the future, it speaks as the Legislature, and its pronouncement has the force of a statute. This Court has repeatedly so held with respect to the fixing of specific rates by state commissions, and in this respect there is no difference between

authority delegated by state legislation and that conferred by congressional action. * * * As respects its future conduct, the carrier is entitled to rely upon the declarations as to what will be a lawful, that is, a reasonable, rate; and, if the order merely sets limits, it is entitled to protection if it fixes a rate which falls within them. Where, as in this case, the Commission has made an order having a dual aspect, it may not in a subsequent proceeding, acting in its quasi-judicial capacity, ignore its own pronouncement promulgated in its quasi-legislative capacity and retroactively repeal its own enactment as to the reasonableness of the rate it has prescribed.''

Mr. Justice Holmes and Mr. Justice Brandeis dissented from an affirmance of the judgment, stating that it ''should be reversed for the reasons stated by Judge Hutcheson in the concurring opinion in *Eagle Cotton Oil Co.* v. *Southern Ry. Co.,* (C. C. A.) 51 Fed. (2d) 443, 445.'' Upon reference to Judge Hutcheson's opinion it will be found that his views expressed are not at variance with those expressed by the majority decision in the *Arizona Grocery Company Case* on the points under consideration in the instant case, nor with our views herein expressed. In distinguishing the rate-making system under some state statutes from the federal Act, Judge Hutcheson said: Under such state systems ''their commissions make their rates, and until set aside by the courts they are final and conclusive on carrier and shipper alike.''

But, it is most vigorously urged, on petition for a rehearing in this case by the defendant's able counsel, that the plaintiff had no vested rights by reason of the law as heretofore declared by this court in the case of *Doney* v. *Northern Pacific Ry. Co.,* 60 Mont. 209, 199 Pac. 432. It is argued that the doctrine of *stare decisis* has no application since there was but the one case decided by this court rather than a series of decisions; and that since the question as to the right of reparation was not necessary to a decision in that case, there is no good reason to accord the plaintiff a right to recover reparations in the case before us. As noted on reference to our decision herein, we simply hold that the shippers and carriers

were controlled by the law as declared in the *Doney Case* until reversed or modified by this court. To this doctrine we adhere, as it appears to be reasonable, logical, and in accordance with the authorities. The construction given to a stat- ■ ute, although erroneous, before its reversal or modification, becomes a part of it as much as though written into it; and the change made in construction will affect only contracts made thereafter. (*Gelpcke* v. *Dubuque,* 1 Wall. 175, 17 L. Ed. 520; *Shelby* v. *Guy,* 11 Wheat. (24 U. S.) 361, 6 L. Ed. 495; *Green* v. *Neal,* 6 Pet. (31 U. S.) 291, 8 L. Ed. 404; *Olcott* v. *Fond du Lac County,* 16 Wall. (83 U. S.) 678, 21 L. Ed. 382; *Carroll County* v. *United States,* 18 Wall. 71, 21 L. Ed. 771; *Fairfield* v. *Gallatin County,* 100 U. S. 52, 25 L. Ed. 546; *Douglass* v. *County of Pike,* 101 U. S. 677, 25 L. Ed. 968; *Louisiana ex rel. Southern Bank* v. *Pilsbury,* 105 U. S. 278, 26 L. Ed. 1090; *Hoven* v. *McCarthy Bros. Co.,* 163 Minn. 339, 204 N. W. 29; *Mason* v. *Nelson,* 148 N. C. 492, 128 Am. St. Rep. 635, 18 L. R. A. (n. s.) 1221, 62 S. E. 625; *Hill* v. *Atlantic & N. C. R. Co.,* 143 N. C. 539, 9 L. R. A. (n. s.) 606, 55 S. E. 854; *City of Sedalia* v. *Gold,* 91 Mo. App. 32; *Falconer* v. *Simmons,* 51 W. Va. 172, 41 S. E. 193; *Haskett* v. *Maxey,* 134 Ind. 182, 19 L. R. A. 379, 33 N. E. 358; *United States Savings Fund & Inv. Co.* v. *Harris,* 142 Ind. 226, 40 N. E. 1072, 41 N. E. 451; *Farrior* v. *New England Mortg. Co.,* 92 Ala. 176, 12 L. R. A. 856, 9 South. 532.) And the rule has been applied in criminal cases. (*State* v. *Bell,* 136 N. C. 674, 49 S. E. 163; *People* v. *Ryan,* 152 Cal. 364, 92 Pac. 853; *State* v. *O'Neil,* 147 Iowa, 513, Ann. Cas. 1912B, 691, 33 L. R. A. (n. s.) 788, 126 N. W. 454.)

In Lewis' Sutherland on Statutory Construction, the rule is thus stated: "A judicial construction of a statute becomes a part of it, and as to rights which accrue afterwards it should be adhered to for the protection of these rights. To divest them by a change of construction is to legislate retroactively. The constitutional barrier to legislation impairing the obligation of contracts applies also to decisions altering the law as previously expounded, so as to affect the obligations of exist-

ing contracts made on the faith of the earlier adjudications."
(Sec. 485.)

"Where vital and important public or private rights are concerned, and the decisions regarding them are to have a direct and permanent influence on all future time, it becomes the duty, as well as the right of the court to consider them carefully and to allow no previous error to continue if it can be corrected. The foundation of the rule of *stare decisis* was promulgated on the ground of public policy, and it would be an egregious mistake to allow more harm than good from it." (26 Am. & Eng. Ency. Law, 2d ed., p. 184; *Mason* v. *Nelson*, supra.)

The petition for a rehearing is denied.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN and MATTHEWS concur.

MR. JUSTICE FORD: I concur in the result reached.